## Harris, Appellant, v. Philadelphia et al.

*Municipalities—Municipal contract—Bid accompanied by certified check—Rejection of bid—Mandatory requirements—Fair competition—Collusive bidding—Fraud—Discretion of director.*

1. Where a statute provides a method or formal mode of making municipal contracts, such provision is mandatory, and must be observed, otherwise the contract is not enforceable against the municipality.

2. The legislative and municipal intent, under the statutes and ordinances passed to carry them into effect, are that there should be open and honest competition in bidding so that fair prices should be procured, and the city protected from collusive bidding as well as favored bidders.

3. Where an ordinance requires a bid for a municipal contract to be accompanied by a certified check for five per cent of the total amount of the bid, the director of the department cannot, after the bids are opened but before the award is made, accept an additional check to make up a shortage in the amount of the original check, and proceed to consider the bid as having been properly submitted.

4. The failure to comply with the requirement as to amount of deposit is not merely a technical irregularity, but a failure to follow a mandatory provision of the city ordinance.

5. In such case, to permit the city official to exercise a discretion and make changes or accept amendments of settlements, or enter into negotiations with bidders as to deposits after the bids are opened, and the bidders had full notice of the requirement as to deposits, would permit fraud and favoritism in the awarding of contracts, and convert the statutory protection of taxpayers into a method whereby their money might be improperly or fraudulently used.

6. A bidder cannot allege that the deficiency was due to his omission to include in his aggregate an item which was merely an incident to the contract, where it appears as a fact that such item was intended to furnish a means of payment for work that might under certain circumstances be necessary, and bidders were notified that it was included in the aggregate on which the deposit was based.

7. Nor can the bidder say that the amount of the deficiency was comparatively small leaving an ample sum to cover any loss to the city which might result, if the bidder should default.

8. The impossibility of fixing a definite point beyond which the discretion of the city official should extend, is the strongest argument in favor of the wisdom of observing the arbitrary amount fixed by the ordinance.

Argued April 15, 1925. Appeal, No. 318, Jan. T., 1925, by plaintiff, from decree of C. P. No. 1, Phila. Co., March T., 1925, No. 4869, dismissing bill in equity, in case of Carl J. Harris v. City of Philadelphia, W. Freeland Kendrick, Mayor, Henry E. Ehlers, Director of City Transit, and Keystone State Construction Co. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Bill for injunction. Before Bartlett, P. J., McDevitt and Taulane, JJ.

The opinion of the Supreme Court states the facts.

Bill dismissed. McDevitt, J., dissented. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* with him *Roberts & Montgomery,* for appellant.—The

municipality, or the municipal official receiving the bids, has the right to waive the irregularity, permit the correction of the irregularity, or, if he believes the interests of the municipality require it, disregard it: Zimmerman v. Miller, 237 Pa. 616; Smith v. City, 2 Brewster 443; Front Drive Motor Co. v. Pittsburgh, 63 Pitts L. J. 409; Kerr & Sons v. Board of Education, 25 Pitts. L. J. (N. S.) 54.

The bid of Cranford and associates complied in fact with the terms of the ordinance: People ex rel. v. McDonough, 173 N. Y. 181; Faist v. Hoboken, 72 N. J. L. 361.

*Joseph P. Gaffney,* City Solicitor, with him *James Francis Ryan* and *Ernest Lowengrund,* Assistant City Solicitors, for appellees.—A contract cannot be entered into without a strict adherence to the statutes and ordinances: Phila. v. Pittsburgh, 253 Pa. 147; Smith v. Phila., 17 Pa. Dist. R. 231; Carpenter v. Boro., 208 Pa. 396; Parker v. Phila., 16 Pa. Dist. R. 740; Hinkle v. Phila., 214 Pa. 126; Smith v. Phila., 227 Pa. 423; Flinn v. Phila., 258 Pa. 355; McManus v. Phila., 201 Pa. 632; Smart v. Phila., 205 Pa. 329; Union Paving Co. v. Phila., 263 Pa. 577; Louchheim v. Phila., 218 Pa. 100; Ryan v. Ashbridge, 10 Pa. Dist. R. 153; Wiggins v. City, 2 Brewster 444.

OPINION BY MR. JUSTICE FRAZER, May 18, 1925:

The City of Philadelphia, through its Department of City Transit, advertised for bids for the construction of a section of the Broad Street subway, the attention of bidders being called to an ordinance of the City of Philadelphia requiring all bids to be accompanied by a certified check for 5% of the total amount of the bid. Six bids were received and when opened it was discovered the lowest was $16,749,936, and the next highest $16,-863,436.75, a difference of approximately $113,500. It was found, however, that the check accompanying the

lowest bid was for $825,000, or about $12,500 short of the amount necessary to make 5% of the total. The bidder's attention was called to the shortage with a request that he submit an additional check to cover the deficiency, and was also informed the department could take no final action as to the legality of the procedure, as the matter must be referred to the city solicitor. An additional check for $25,000 was deposited the same day. The city solicitor subsequently advised the director of the department that, since the bid was not accompanied by the certified check in the required amount, it could not be considered in awarding the contract and any negotiations with a bidder, entered into after the opening of bids, was illegal. Plaintiff, as a taxpayer of the City of Philadelphia, subsequently filed the present bill to enjoin the director from rejecting or refusing to consider the lowest bid because of the irregularity connected with the deposit. An answer was filed and testimony taken before one of the three judges of the common pleas court in which the proceedings were brought, who awarded the injunction enjoining the director of transit from rejecting the bid and directing that a decree be so drawn as to permit the director to accept the bid if in his discretion he believed it for the best interest of the city so to do. On argument of exceptions before the court in banc, the decree was reversed by a majority of two to one and the bill dismissed. This appeal from the decree in favor of the City of Philadelphia and its director of city transit followed.

The shortage in the check was apparently due to the failure of the bidder to include in his aggregate the principal sum of an item in the specifications known as the "force account" amounting in all to $300,000. While it has been argued that this item was merely an incident to the contract and the failure to include it therefore no ground for rejecting the bid, there is no merit in this contention in view of the evidence that the force account item of the bid was intended to furnish a means for

payment for work that may be found necessary but which was not of a class covered by unit prices and payment for which would be based on actual cost for material, labor and liability insurance, plus a fixed percentage to cover expense or superintendence and the use of tools and plant, and in further view of the fact that the information to bidders stipulated "the aggregate of the bid upon which the certified check is based is obtained by applying the unit prices bid to the assumed quantities stated hereinafter, including the force account item (principal sum plus the percentage bid)." Under the circumstances, we can see no reason for distinguishing between this item and the others of the contract. The work to be done under this clause is as important as any other part of the contract and in this case the item is a substantial one, amounting as it does to $300,000. We consequently have presented for consideration the question whether, under an ordinance requiring a bid to be accompanied by a certified check for 5% of the total amount of the bid, the director of city transit may, after the bids are opened but before the award is made, accept an additional check to make up a shortage in the amount and proceed to consider the bid as having been properly submitted.

The gist of appellant's argument is that the irregularity was, at most, a technical one; that the purpose of the deposit was merely to show good faith, and guarantee that the bidder, if successful, would enter into a formal contract or forfeit the deposit or so much of it as was necessary to reimburse the city for the difference between the amount of the bid and the actual cost of doing the work; that the check of $825,000 originally deposited was ample for this purpose, inasmuch as the difference between the lowest bid and the next higher was merely $113,500; and that the city should not, because of a technicality, be deprived of the opportunity to save the taxpayers a large sum of money. In other words, they claim the provisions of the statutes and ordinances

were substantially complied with and the director should have been permitted to exercise discretion in the matter. On the other hand, it is contended on behalf of appellee that the failure to comply with the requirement as to the amount of deposit was not merely a technical irregularity, but a failure to follow a mandatory provision of the city ordinance, and to permit the director of transit to exercise a discretion, and make changes or accept amendments of settlements or enter into negotiations with bidders after the bids were opened, would permit fraud and favoritism in the awarding of contracts and convert the statutory protection of taxpayers into a method whereby their money might be improperly or fraudulently used.

The Act of May 23, 1874, P. L. 230, section 6, provides that all work and materials required by the city "shall be performed and furnished under contract to be given to the lowest responsible bidder under such regulations as shall be prescribed by ordinance, and it shall be the duty of councils forthwith to enact such ordinances." Conforming to this provision, the City of Philadelphia enacted an ordinance dated July 2, 1924, amending and repealing earlier ordinances and providing as follows: "Section 1. The council of the City of Philadelphia ordains, That every advertisement for proposals for work to be done or materials to be furnished for or on behalf of the city shall state the requirements that all bids must be accompanied by a certified check on a responsible bank or trust company in favor of the city to the amount of five per centum of the sum of such bid. Should the successful bidder refuse or omit to enter into the contract when so required, such check, or so much thereof as may be necessary to reimburse the city for the difference between the amount of the said bid and the actual cost to the city of the doing of the work or furnishing the material, together with any other costs that may be incurred by the city, shall be forfeited to and become the property of the city." Pursuant to the above

ordinance, the advertisement for bids contained a notice that "No bid will be considered unless accompanied by a certified check on a responsible bank or trust company in favor of the City of Philadelphia, to the amount of five (5) per centum of the sum of such bid, in accordance with the provisions of an ordinance approved March 7, 1924, as amended by ordinance approved July 2, 1924, and reprinted in full in the specifications." The plans and specifications forming the basis for bids contained the following relevant terms: "4. Informal Proposal.— A proposal which is incomplete, obscure, conditional, or unbalanced, or which contains alterations, erasures, additions not called for or irregularities of any kind, or in which the proposed surety is not named, may be rejected as informal. A proposal which is not accompanied by the required certified check will be rejected. 5. Guaranty for execution of contract.—As required by ordinance of March 7, 1924, as amended by ordinance approved July 2, 1924, set forth in full [in] a following section, proposals must be accompanied by a certified check on a responsible bank or trust company, drawn in favor of the city and for an amount equal to five (5) per cent of the aggregate of the bid, to be used for the purposes and upon the conditions set forth in the ordinance. The aggregate of the bid upon which the certified check is based is obtained by applying the unit prices bid to the assumed quantities stated hereinafter, including the Force Account Item (principal sum, plus the percentage bid) ...... 7. Rejection of bids.—The director reserves the right to reject any or all bids as he may deem best for the interest of the city."

The foregoing provisions clearly contemplate minor irregularities which could be waived or corrected by the director in his discretion. It seems to be equally clear that the requirement as to the certified check is mandatory, in prescribing that such check must accompany the bid and equal 5% of the amount thereof, and, in absence thereof, the bid "will" be rejected. Prospective bidders

were thus put upon notice that this requirement was one which must be strictly complied with and it was their duty to do so under the penalty of having the bid rejected in case of oversight or miscalculation of any character.

It has been uniformly held, and may now be regarded as the general rule in this State, that, where a statute provides a method or formal mode of making municipal contracts, such provision is mandatory and must be observed, otherwise the contract is not enforceable against the municipality: Hinkle v. Phila., 214 Pa. 126, 131; Phila. Company v. Pittsburgh, 253 Pa. 147, 151, 152, and cases cited; Dolan v. Schoen, 261 Pa. 11, 16. Consequently, whenever a statute and city ordinances, made pursuant thereto, provide when and the manner in which city contracts shall be made, it is necessary to strictly follow such provisions: Hinkle v. Phila., supra, page 131; Flinn v. Phila., 258 Pa. 355, 361. "The authority of a municipal body to legislate or to contract is conferred by the lawmaking power of the State, hence it must be exercised in the manner provided in the statute conferring it. A municipal corporation is simply the agent or instrumentality of the state to administer local government and to exercise certain powers and to perform certain duties within defined territorial limits in conformity with the method and to the extent delegated in the legislation creating and applicable to the corporation. Its contractual powers are derived from the same source and are circumscribed by the same limitations": Carpenter v. Yeadon, 208 Pa. 396, 399; Phila. Company v. Pittsburgh, 253 Pa. 147, 152. The legislative and municipal intent, under our statutes and ordinances passed to carry them into effect, are that there should be open and honest competition in bidding so that fair prices should be procured and the city protected from collusive bidding as well as favored bidders: Louchheim v. Phila., 218 Pa. 100, 102. "It is only by strictly following these provisions in awarding public

contracts that the city may secure the benefit and advantage of fair and just competition between bidders and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms. The private negotiations between a director and successful bidder through which the terms and conditions of a bid are modified or changed, resulting either to the advantage or disadvantage to the city, are not within the purpose and spirit of the law": Louchheim v. Phila., supra, page 103. "The infirmities of human nature, the natural disposition to favor friends, personal and political, and the various motives which influence public officers to depart from a strict and rigid adherence to the obligations that rest upon them as representing the public, make it important that they should be held strictly within the limits of the powers conferred upon them": Smith v. Phila., 227 Pa. 423, 431.

While recognizing the foregoing principles as settled law in this State, it is argued by appellant that the mere submission of an additional check sufficient to fully cover the amount of their bid was not a violation of these principles but merely a technical matter which could not in any way affect either the rights of the city or other bidders, and might have resulted in the saving to the city of the difference between the lowest bid submitted and the next higher one. Counsel for appellant rely mainly upon two Pennsylvania decisions: Smith v. City, 2 Brewster 553, decided in 1868 by the Court of Common Pleas of Philadelphia County, and Zimmerman v. Miller, 237 Pa. 616. In the first case the City of Philadelphia advertised for bids for street cleaning and plaintiff claimed to be the lowest bidder but the contract was awarded to another who had neglected to file a bond with his bid as required by ordinance. Plaintiff applied for an injunction to restrain the awarding of the contract because of the irregularity in the bid. The court dismissed the bill on the ground that the complainant was without standing in equity and stated, "the bond required by

ordinance is not the security to be exacted for the faithful performance of the contract but simply a guaranty that the lowest bidder will come forward, give the required security, and sign the formal agreement. This is clearly a stipulation which the city authorities might, in the exercise of an honest discretion, insist upon or waive at their pleasure." The above case has been frequently referred to in subsequent lower court decisions and by city solicitors in their opinions where questions of this character arose.

In Zimmerman v. Miller, supra, a school board advertised for bids for the erection of a schoolhouse, bids to remain open until a designated hour on a specified date and to be accompanied by certified check in the sum of $500. Within the time specified three bids were entered and on the following day, but before the bids were opened, one of the bidders submitted a correction changing the amount named in his proposal. The board rejected this bid for the reasons that it was illegal because not received in time and also it was not accompanied by a certified check. Such check did, in fact, accompany the original bid but no additional check was forwarded with the correction to the original bid. This court there held that rejection of the bid was improper because the second bid was merely a correction in the amount of the first and was in the hands of the board previous to the opening of any of the bids, and the certified check previously deposited applied to the proposal as amended, saying: "This is not a case where the court attempted to interfere with an exercise of duty deliberative or discretionary in character, and therefore it does not fall within the line of authorities cited by the appellant; it is an instance of mistaken procedure on the part of a school board under a misapprehension of the law, and falls rather within the line of cases typified by Louchheim v. Phila., 218 Pa. 100." It accordingly appears the above case is distinguishable from the present on the ground that the amendment to the bid, though not re-

ceived on the date required by the advertisement, was in fact received before the bids were opened and no harm could possibly have resulted from receiving and filing it. There was no express statutory provision governing the time of closing the bids and the time was fixed merely for the convenience of the board; and, until the proposals were opened, it was not an abuse of discretion on the part of the board to permit an amendment to be made by any of the bidders. In the present case we have the express statutory provision requiring the rejection of bids not accompanied by certified checks in the proper amount, and we have the additional fact that the balance necessary to make up the full amount was not actually received until after the bids were opened.

There are cases in other jurisdictions cited by appellant which recognize and apply a doctrine of substantial performance, holding that, where the requirements of a statute are substantially complied with, technical irregularity may be waived by the municipal authorities; they, however, do not apply here. Much of the apparent conflict between decisions in other jurisdictions and our own cases may be accounted for by a difference in the wording of the statutes or ordinances governing the letting of contracts. Obviously, a bid which under one statute is merely irregular and subject to correction in the discretion of the municipal officer whose duty it is to receive it, may, under another statute, be so defective and fall so far short of complying with statutory requirements that it could not be received and would not be the subject of amendment or correction. What is an essential requirement under one statute may be nonessential under another. Each case must therefore be decided on its own facts, and in the light of the particular legislative provisions under which the contract is to be let.

In the present case, the exercise of discretionary power is contemplated in the "information for bidders" by providing that "a proposal which is incomplete, ob-

scure, conditional or unbalanced, or which contains alterations, erasures, additions not called for or irregularities of any kind, or in which the proposed surety is not named, *may* be rejected as informal." Had the Cranford bid contained a defect of the character so described, no objection could have been made if the director had, in the exercise of his discretion, permitted the bid to be corrected. But with respect to the deposit, we find the provision that "a proposal which is not accompanied by the required certified check *will* be rejected," this clause being included pursuant to the mandatory provisions of the ordinance that all bids "must be accompanied" by a certified check for the agreed amount. We thus have explicit notice brought home to all bidders that their bid would be rejected unless this particular feature of the ordinance were fully complied with. All persons knew it was an essential requirement and one which must be strictly performed and that the city official was without discretion in the matter. He could correct or disregard technical irregularities but this requirement he was bound to enforce. There can be no injustice or hardship in enforcing a provision of this character. It was designed to protect the city against irresponsible bidders. To permit one bidder to file a check for less than the required amount would give him an advantage over others; and to permit him to supply the deficiency later and after the bids are opened, would be a step in the direction of opening the door to fraud and favoritism and of destroying the statutory protection given to the taxpayers. It is no answer to say that the amount of the deficiency was comparatively small, leaving an ample sum to cover any loss to the city which might result if the bidder should default, the purpose of the deposit being merely to guarantee that the successful bidder would enter into the contract if awarded him and that as soon as the contract was signed the deposit was to be returned. Even though the deficiency in the check was comparatively small, if the amount may be made up

later, beyond what point are we to say that the discretion of the director should not extend? Should, a deficiency of one-fourth or one-half be permitted, or should there be no limit other than that which the director might see fit to impose. If so, what is to prevent him from accepting a bid accompanied by no deposit, providing the bidder is willing to proceed to sign a contract, and thus disregard entirely the express mandatory provisions of the ordinance. The impossibility of thus fixing a definite point beyond which the discretion of the director should not extend, is the strongest argument in favor of the wisdom of observing the arbitrary amount fixed by ordinance. We accordingly conclude that the requirement of a deposit is not a mere technical irregularity which is subject to correction after the bids are open, in the discretion of the director, but a mandatory requirement imposed by ordinance which must be fully complied with by the bidder as a condition precedent to a consideration of his bid.

The decree of the court below is affirmed, at appellant's costs.