[Civil No. 2435. Filed March 1, 1926.]

[243 Pac. 910.]

THOMAS K. MARSHALL and L. F. MARSHALL, Husband and Wife, Appellants, v. E. C. DIETRICH, as Superintendent of Streets and as City Engineer of the City of Tucson, Pima County, Arizona; H. B. LANGERS, PHILIP CONTZEN, JOHN H. PFEIFFER, GEORGE S. HUGHES, HENRY O. JAASTAD, B. A. PILCHER, Each and All as Members of the Council of the City of Tucson, Pima County, Arizona; and JOHN E. WHITE, as Mayor of the City of Tucson, Pima County, Arizona, Appellees.

1. APPEAL AND ERROR—APPEAL OF PROPERTY OWNER, ATTEMPTING TO PREVENT CONTRACT FOR STREET IMPROVEMENT, WILL NOT BE DISMISSED AS MOOT, BECAUSE IMPROVEMENT WAS COMPLETED, AND BONDS SOLD.—Property owner's appeal, in suit in which he attempted to prevent city from contracting for certain street improvement, will not be dismissed as moot case, merely because streets were completed, and bonds were sold, since levying taxes to pay bonds would be further proceeding in matter, and same question would be presented when plaintiff resisted collection of tax.

2. MUNICIPAL CORPORATIONS—STATUTE HELD NOT TO PRECLUDE AWARD OF IMPROVEMENT CONTRACT TO BIDDER, WHOSE BOND WAS LESS THAN STATUTORY AMOUNT (CIV. CODE 1913, PAR. 1976, AND PARAGRAPH 1960, AS AMENDED BY LAWS 1922, CHAP. 25, § 2).—Bond of bidder on street improvement, required by Civil Code of 1913, paragraph 1960, as amended by Laws of 1922, chapter 25, section 2, is for protection of city, and not of property owners, and city constructing improvement, under Civil Code of 1913, paragraphs 1953–1977, may waive requirement and let contract to bidder, whose bond was somewhat less in amount than required ten per cent of bid, in view of rule of liberal construction prescribed by paragraph 1976.

See (1) 4 C. J., p. 577, n. 86.  (2) 28 Cyc., p. 1030, n. 94.

APPEAL from a judgment of the Superior Court of the County of Pima. Gerald Jones, Judge. Affirmed.

Messrs. Kingan, Campbell, Conner & Darnell, for Appellants.

Mr. Ben C. Hill, City Attorney, and Messrs. Richey & Richey, for Appellees.

LOCKWOOD, J.—In 1925, the mayor and common council of the city of Tucson passed a resolution of intention to pave and otherwise improve Park Avenue and East Broadway in said city, under the provisions of the Improvement Act (chapter 13, title 7, Revised Statutes Arizona 1913, Civil Code), together with the various amendments thereto from time to time made by the legislature. The resolution of intention provided for alternative types of paving, and notice was duly given by publication that bids would be received on the sixth day of April, 1925. Lee Moore Contracting Company, of El Paso, Texas, submitted two bids under the call, one for asphaltic concrete, and the other for straight concrete construction, and with the bids filed a bond with the city in the sum of ten thousand dollars, which amount was considerably over ten per cent of their bid for the asphaltic concrete, but four hundred and thirty dollars less than ten per cent of that for straight concrete.

The city council, upon opening, examining and publicly declaring said bids, did not reject any of them for irregularity or insufficiency of any kind, but referred them to the city engineer for tabulation. On April 29th, 1925, the council by resolution, determined that no sufficient petitions had been filed by the property owners as provided by statute, determining the type of construction, and thereupon adopted asphaltic

concrete as the paving to be used in said improvement, and accepted the bid of Lee Moore Contracting Company for the work, rejecting all others submitted. At the same time the Lee Moore Contracting Company deposited with the city the sum of $500 as an additional amount to be added to their bid bond which had been filed April 6th, which was by resolution of the council accepted as a part of the bond to bring it up to the ten per cent provided by law. Thereupon, on the first and second days of May, 1925, the council published notice of the award of the contract.

On May 15th, 1925, Thomas K. Marshall and L. F. Marshall, his wife, hereinafter called appellants, filed with the city recorder a protest against the award of the contract for the reason as set forth in their notice:

"That such award and the proceedings of your honorable body are irregular, for the reason that the bid bond of said Lee Moore Contracting Company is insufficient and does not comply with the requirements of the law. This protest is made under the authority of the provisions of section 2, chapter 25, Laws of the Session of the Arizona Legislature 1922."

In the opinion of the council, the objection was not well taken, and it was rejected by formal resolution, and the contractor notified to come in and make the statutory bond for the performance of the contract and the benefit of labor and materialmen, and to sign the contract, which it did immediately. The superintendent of streets was about to sign the contract when appellants herein filed their action against the superintendent of streets, the mayor and the members of the council, whom we will hereafter call appellees, setting up substantially the foregoing facts, and asking for an injunction forbidding the city proceeding further with the improvement of Park Avenue. A temporary restraining order was issued, and

the matter came on for hearing on a demurrer filed
by appellees to the complaint, which demurrer was
by the court sustained, and appellants electing to
stand upon their complaint, the temporary restraining
order was dissolved, and the complaint dismissed,
whereupon appellants have brought the case before
us for review.

In the meantime, and before the case became at
issue in this court, the construction company went on
with the improvements in question, and they were
duly completed, and it was agreed on the oral argu-
ment by counsel that the bonds issued under the pro-
ceedings had been sold and would be delivered before
it was physically possible for this court to render a
decision. It was therefore strenuously urged by ap-
pellees that this had become a moot case, since every
act against which appellants sought injunctive relief
had already been completed, and under the rule laid
down by us in *Harrison* v. *Hunt,* 28 Ariz. 75, 235 Pac.
158, the appeal should be dismissed.

While it is true the paving has already been com-
pleted and the bonds issued and delivered, in order
that the bonds may be paid, it will be necessary for
the city of Tucson through its common council, from
time to time to levy and collect taxes upon the prop-
erty of appellants, and we think that without serious
stretch of the imagination such action on the part of
the council may properly be considered as "proceed-
ing further in the matter of the improvement," of the
street in question. Dismissal of this appeal would
simply mean that appellants, when it was attempted
to collect a tax on their property, would be compelled
to resist the same in another proceeding, and the ulti-
mate question of the legality of the bonds would in
such proceeding rest upon the very point presented to
us in this one. We therefore consider the appeal
upon its merits.

It is agreed by counsel that there is but one point for determination in this case, and that is whether or not the irregularity in the bid bond of the successful bidder makes the contract void. Appellants' theory is that the provision of the statute requiring a bid bond in a certain sum is mandatory, and the failure to furnish such bond jurisdictional, so that the authorities of the city, when it appeared that the bond submitted with the bid was $430 short of being ten per cent of the highest bid, were compelled as a matter of law to reject it, and had no jurisdiction further to consider it. Appellees, on the other hand, while admitting such failure was an irregularity, claim it was not jurisdictional, and the council acted within its rights in accepting the bid, and that appellants, being in no way injured by such action, may not complain thereof.

The case turns upon the proper construction of paragraph 1960, Revised Statutes of Arizona of 1913, Civil Code, as finally amended by chapter 25, section 2, Session Laws of 1922, which section, so far as material, reads as follows:

"Sec. 1960. All proposals or bids offered shall be accompanied by a bond . . . for an amount which shall not be less than ten per centum of the aggregate proposal, provided, that any bidder submitting alternative bids . . . need only furnish one bond, which shall be at least equal to ten per centum of the amount of the highest proposal submitted by such bidder for the making of such improvement. The legislative body of said city shall, in open session, open, examine and publicly declare the said proposals or bids, and may reject any and all proposals or bids if it deem this for the public good, . . . and shall reject all proposals other than the lowest and best regular proposal or bid of any responsible bidder."

It appears from the foregoing that the question before us is the meaning and effect of the phrase "and shall reject all proposals other than the lowest

and best regular proposal or bid." Appellants cite
us to the case of *Harris* v. *City of Philadelphia,* 283
Pa. 496, 129 Atl. 460. In that case the city of Phila-
delphia advertised for bids for the construction of a
subway. Acting under statutory power, the city
enacted an ordinance requiring all bidders to accom-
pany their proposals with a certified check for five
per cent of the total amount of the proposal. The
lowest bid submitted was not accompanied by a check
for the required sum, but, on the bidder's attention
being called to the shortage, he submitted an addi-
tional check to cover the deficiency. The city solicitor
informed the director of the department he could
not consider this bid on account of the deficiency in
the check, and suit was brought by one of the tax-
payers to enjoin the city from rejecting the bid in
question, as it was the lowest. The Supreme Court
of Pennsylvania, in substance, stated that the ordi-
nance was mandatory, and wound up by saying:

"All persons knew it was an essential requirement
and one which must be strictly performed, and that
the city official was without discretion in the matter.
He could correct or disregard technical irregularities,
but this requirement he was bound to enforce . . . We
accordingly conclude that the requirement of a de-
posit is not a mere technical irregularity, which is
subject to correction after the bids are opened, in
the discretion of the director, but a mandatory re-
quirement imposed by ordinance, which must be
fully complied with by the bidder as a condition pre-
cedent to a consideration of his bid."

Our original improvement chapter was modeled in
great part on what is known as the "Vrooman Act"
in the state of California, and in the case of *Edwards*
v. *Berlin,* 123 Cal. 544, 56 Pac. 432, in construing the
section of that act in regard to the duty of the council
to publicly examine and declare the bids in open ses-
sion, it was held:

"No argument is needed to show that this requirement is imperative. It was intended thereby to secure to the property owners, the public, and the rival bidders, fair play and an honest deal. At the same time, it affords some degree of security to the board against unjust charges. It is enough, however, that it is required by the statute, and compliance may be of advantage to the property owners. . . . "

The clause under construction in this case was added in 1922 to a sentence in our act similar to that construed in the Edwards-Berlin case, *supra,* and appellants urge that the same reasoning used by the court in that case would apply to the added sentence in this.

If we are to adopt a strict construction of the law, there is no doubt the position of appellants is well taken. The penalty of the bond accompanying the bid was smaller than that provided by law. Any bid unaccompanied by a bond of the amount set forth in the statute is obviously "irregular," and the language of the section is that the council "shall reject all proposals other than the lowest and best regular proposal." But are we required to insist on an interpretation of the statute which holds a literal compliance with every provision thereof is jurisdictional? Paragraph 1976 of the Improvement Law reads as follows:

"Sec. 1976. The provisions of this chapter shall be liberally construed to promote the objects thereof."

In the case of *Mosher* v. *City of Phoenix,* 25 Ariz. 297, 216 Pac. 242, we expressly adopted the policy of liberal construction, and held therein that, even though the act provided that certain things "shall" be done, it did not necessarily follow that the word "shall" was mandatory. We think it would be too technical a construction to hold that the inadvertent failure of a contractor to file a bond of the exact amount required by law with his bid deprived the

city council of jurisdiction to waive such irregularity. As was said by the Supreme Court of California in *Greenwood* v. *Morrison*, 128 Cal. 350, 60 Pac. 971:

"The bond which accompanied the proposal of the contractor to do the work, and which should have been in an amount equal to 10 per cent of the aggregate amount of the proposal, appears to have been in fact for a sum $33 less than the requisite amount. It is argued from this that all subsequent proceedings were vitiated, and that the assessment must fall, but the purpose of this preliminary bond was only to assure the board that the bidder would enter into the contract, if awarded to him, and to penalize him for his failure so to do. While it would be irregular for the city council to countenance a bond or certified check for an amount less than that required by the statute, the irregularity would not be jurisdictional. The preliminary bond has served its purpose when the contract has been awarded, and the subsequent undertaking conditioned upon the due performance of the work, has been entered into."

In *Amodeo Co.* v. *Town of Woodward*, 192 Iowa 535, 185 N. W. 94, the statute provided that the bid must be accompanied by a certified check in the sum of ten per cent of the amount bid, and the bidder had in good faith deposited a check considerably smaller. His bid was accepted by the council, but he refused to sign the contract and attempted to prevent the city from cashing his check, on the ground that, since his bid was illegal, the city could not collect the check on account of his failure to enter into a contract to do the work in accordance with the bid. The court said:

"The matter complained of as to the size of the bond is not an illegality of which the property owners could complain. . . . This provision of the law was intended wholly for the protection of the city."

The same situation arises in *Tunny* v. *Hastings*, 121 Minn. 212, 141 N. W. 168, where the statute pro-

vided that no bid should be considered unless accompanied by cash deposit or certified check for at least fifteen per cent of the amount bid. After the bid was accepted by the city, the contractor endeavored to withdraw on the ground that his bid was illegal because he had not made a sufficient deposit, and it was held that the error was not jurisdictional.

While these last two cases refer to an attempt on the part of the bidder to evade the carrying out of his bid, we think it makes no difference in the principle involved. If, as a matter of fact, the defect is jurisdictional, either a contractor or a property owner can take advantage of it. If, on the other hand, it is a mere irregularity which the council could waive, and which would not permit the contractor to rescind, then a property owner, if he is in nowise injured by the action of the council, is in no position to complain.

Taking into consideration the rule in regard to liberal construction of the act, and the obvious purpose of requiring a bid bond being to protect the city by compelling the contractor to enter into the contract according to the terms of his bid, and not to protect the property owners in seeing that the contract was properly executed, a matter which is governed by an entirely different bond, we are of the opinion that, in the absence of a showing of fraud, the city council has the jurisdiction to waive an irregularity of the kind in question, and to consider and accept the bid, notwithstanding the fact that the bid bond did not comply with the strict letter of the statute.

For the foregoing reasons, the judgment of the superior court of Pima county is affirmed.

McALISTER, C. J., and ROSS, J., concur.