## Yost v. State Public School Building Authority

*James W. Evans*, for defendant.

*Francis B. Haas, Jr.*, for plaintiff.

BOWMAN, J., March 29, 1965.—By amended complaint in equity as a taxpayer and as the lowest bidder plaintiff seeks to enjoin the State Public School Building Authority from awarding an electrical contract incident to a school construction project to any bidder other than himself.

On March 17, 1965 a hearing was held on plaintiff's application for a preliminary injunction, at which hearing it was stipulated by the parties that the record so made be considered as taken on final hearing for the permanent injunction also sought by plaintiff. By order of court dated March 19, 1965, plaintiff's application for preliminary injunction was refused.

The facts are not in dispute. From the record we make the following

FINDINGS OF FACT

1. Plaintiff is an individual, trading and doing business as the Yost Electric Company, at 149 Arch Avenue, Greensburg, Pa.

2. Defendant (hereinafter referred to as the "authority") is an instrumentality of the Commonwealth, organized for the purpose of constructing public school buildings as part of the public school system of the Commonwealth.

3. In connection with a school construction project known as Belle Vernon Area Joint High School, Rostraver Township, Westmoreland County, Pa., Project No. K3-750, the authority advertised for bids for general construction, heating, plumbing and electrical work to be performed incident thereto.

4. Bid proposals received on this school construction project were to be opened February 25, 1965, at 2 p.m. (EST).

5. On or before February 24, 1965, on a form supplied by the authority, a bid proposal was submitted to the authority for electrical work incident to said project, which bid proposal was accompanied by a bid bond in the proper amount. This bid proposal was submitted by plaintiff.

6. This particular bid proposal was identified in the opening paragraph as being that of the Yost Electric Company, which name also appeared at one place in the body of the instrument, and was executed at

the place indicated for the signature of a bidder who is an individual as:

"/s/ JOHN R. McKILLOP
Bidder
149 Arch Avenue
Greensburg, Pennsylvania"

7. The bid bond accompanying the bid proposal was identified as being that of Yost Electric Company, F. W. Yost T/A principal and was executed by the principal as:

"Yost Electric Company, F. W. Yost T/A
By /s/ F. W. Yost"

8. Nine bid proposals for electrical work incident to this project were submitted to the authority ranging from a high base bid of $324,000 to a low base bid of $260,750.

9. The particular bid proposal under consideration was the lowest base bid. The next lowest base bid was $264,000.

10. The total cost of the project, based upon a tabulation by the authority of the apparent lowest bids, will be $3,337,970.

11. No contracts have been awarded by the authority for this project because of this litigation.

12. In submitting his bid, plaintiff had possession of, and was familiar with, a document identified as "Instructions to Bidders", prepared and adopted by the authority as rules and regulations governing the procedures for bidding on projects authorized by the authority.

13. Paragraph 9, proposal forms, of said instructions to bidders provides, in part, as follows:

"The bidder shall sign his proposal correctly. If the proposal is made by an individual in addition to his signature, his post office address must be shown; if made by a firm or partnership, the post office address of each member of the firm or partnership; if made by a cor-

poration, the person signing the proposal must be the President or Vice President of the corporation, or individual, whose certificate of authority to execute must accompany the proposal and the name of the State under the laws of which the corporation was chartered and the names, titles and business address of the President, Secretary and Treasurer must appear therein."

14. The bid bond form, prepared by the authority, in reciting the condition of the obligation, provides, in part,

"WHEREAS the Principal has submitted to the Obligee a certain bid attached hereto and made a part hereof, to enter into a contract in writing for the construction of Project No. . . ."

15. Bid proposals for this project were opened by the authority beginning at 2 p.m. on February 25, 1965.

16. On or before the time of the opening of these bid proposals, plaintiff had not submitted to the authority any oral or written notice that John R. McKillop was an authorized agent of plaintiff for the purpose of executing the bid proposal in question.

17. At the time plaintiff's bid proposal was opened and examined by the authority, it was rejected as not having been properly executed.

18. Plaintiff, through a reporting service, thereafter learned that the authority had rejected his bid proposal, and on March 2, 1965, sent a telegram and letter to the authority advising it that John R. McKillop was his authorized agent to submit the bid proposal in question and ratifying his agent's act in submitting said bid proposal.

19. On March 5, 1965, the authority advised plaintiff by letter that his bid proposal had been rejected by the authority as it was improperly signed.

20. Plaintiff was in Florida at the time the bid proposal in question was prepared, and the amount of the

bid to be submitted was discussed by telephone between plaintiff and John R. McKillop before it was submitted.

21. John R. McKillop, by title, is the chief supervisor of plaintiff's business and was authorized by plaintiff to execute the bid proposal in question.

22. In previous business dealings with the authority, plaintiff had been awarded electrical contracts based upon bid proposals submitted over his own signature.

23. On one previous occasion, a bid proposal was submitted by plaintiff to the authority over the signature of "Yost Electric Company, John R. McKillop". It was not the lowest bid for that particular project and, therefore, was not acted upon.

## DISCUSSION

The State Public School Building Authority Act provides that construction contracts shall be awarded to the lowest responsible bidder and confers upon the authority the power to make rules and regulations for the submission of bids.[1]

Pursuant to this provision, instructions to bidders were adopted by the authority, and, as pertinent here, require bid proposals to be submitted on forms furnished by the authority. They also require that "the bidder shall sign his proposal correctly", and that, if the bidder is an individual, "in addition to *his signature*, his post office address must be shown".

In the instant case, it is undisputed that plaintiff, a sole proprietor doing business as Yost Electric Company, did not personally sign the bid proposal in question, and that John R. McKillop, while authorized to sign the proposal on plaintiff's behalf prior to its submission to the authority, in affixing his own signature to the bid proposal, did not indicate that in doing so he was acting on behalf of plaintiff, nor did he, by descriptive title or otherwise, evidence authority to act for

[1] Section 10, Act of July 5, 1947, P. L. 1217, 24 PS §791.10.

plaintiff. It is equally clear that the authority was without any other information or knowledge at the time bids were opened which would have indicated that McKillop was authorized to execute the bid proposal on behalf of plaintiff. The bid proposal itself would indicate that the Yost Electric Company was the ostensible bidder, and it would appear that the authority from past business relations with plaintiff would know that he operated his sole proprietorship under the name of Yost Electric Company.

Under such circumstances, can it be said that plaintiff, in submitting his bid proposal, complied with the instructions to bidders, such compliance being necessary to constitute a valid bid? : R. & B. Builders, Inc. v. Philadelphia School District, 415 Pa. 50 (1964) ; Whitemarsh Township Authority v. Finelli Brothers, Inc., 408 Pa. 373 (1962).

In insisting that his bid proposal did comply with the bidding instructions, plaintiff points out (a) that the bid bond to which the bid proposal was attached and "made a part hereof" was personally signed by plaintiff, and (b) that McKillop, who affixed his own signature to the bid proposal, was, in fact, authorized to execute the same on behalf of plaintiff. These facts, plaintiff contends, together with the fact that the name Yost Electric Company appeared twice in the body of the bid proposal sufficiently identified the bid proposal as being that of plaintiff. From this, plaintiff argues that his bid proposal so executed would constitute a binding offer on his part which, upon being accepted by the authority, would constitute a binding contract. Such a bid proposal being the low bid, plaintiff would have us conclude that the authority is required by law to accept it.

On the other hand, the authority contends (a) that plaintiff clearly failed to comply with the bidding instructions requiring bid proposals submitted by indi-

viduals to be personally signed by them, there being no provision in the bidding instructions permitting such bids to be signed by other persons on behalf of an individual, and (b) assuming that the bidding instructions could be so construed, the execution by one person of a bid proposal on behalf of another should be evidenced in the signing of the bid itself, and the power to so act should be made known prior to, or contemporaneously with, its submission. To hold otherwise, the authority argues, would create uncertainty following the opening of bids, leading to possible withdrawal of otherwise low bids for want of authority of the purported agent to bind the bidder, and lend itself to possible fraud or favoritism between bidders and public officials.

While there appear to be no decisions of our courts or those of other States upon the specific issues here raised, our Pennsylvania Supreme Court has recently had occasion to pass upon the very bidding instructions here involved, and, on a number of other occasions, has passed upon other bidding instructions prescribed by statute, ordinance or by the public body undertaking a public works contract.

In Modany v. State Public School Bldg. Authority, 417 Pa. 39, affirming a decision of this court,[2] injunctive relief was denied to a bidder who attempted to withdraw a bid containing a mistake by a method at variance with the bidding instructions as to withdrawal, and under circumstances whereby the attempted withdrawal did not reveal the reason therefor and did not come to the attention of the authority until shortly before the opening of bids. After reviewing the instructions to bidders, particularly as they referred to withdrawal of bids, the court observed (page 45):

"The orderly procedure of making an offer, partic-

---

[2] 79 Dauph. 243 (1962), exceptions dismissed 81 Dauph. 156 (1963).

ularly in regard to public contracts, requires care that the bidders be protected as well as the public interest. This care extends to the procedure in withdrawal of bids to prevent mischief. Reasonable regulations that protect these interests and are consonant with contract law will be upheld. . . . Reasonable and fair provisions surrounding competition for contracts for the performance of public works is necessary and, therefore, they must be established and maintained;" and later quoted with approval from the lower court opinion of Judge Herman as follows:

"The Chancellor aptly said: 'For the general welfare of the public this type of loose conduct in the contractual relations arising from public contracts should not be condoned. To so condone it would not only be placing a premium on negligence, but would be opening the door for fraudulent conduct between bidders or between a bidder and the public body inviting the bid. For these reasons strict compliance with the Instructions to Bidders must be insisted upon.' "

In Whitemarsh Township Authority v. Finelli Brothers, Inc., supra, a public body sought to enforce a low bid submitted by a corporation but which bid was unsigned. The applicable instructions to bidders were quite similar to those before us in the instant case. In refusing to compel the corporate defendant to enter into a contract consistent with the unsigned low bid it had submitted, the court stated, (page 378) :

"We do not subscribe to the argument that the instructions quoted were merely directory and solely for the benefit of the Authority. The requirement that the bid be signed by the bidder was not only for the purpose of facilitating the process and the identification of the bidder, as appellant argues, more importantly, it was for the purpose of legally binding the bidder. For in the case of a corporation, it is only such an officer or officers as stipulated, or others so authorized, that could clearly

bind the corporation. See, Business Corporation Law, Act of May 5, 1933, P. L. 364, §305, 15 P. S. §2852-305; and, Lebowitz v. Keystone Insurance Agency, Inc., 198 Pa. Superior Ct. 495, 182 A. 2d 289 (1962).

"Further, to conclude that the signing of the bid requirement was solely for the benefit of the Authority and could be waived would violate the requirement of mutuality of obligation. As Williston on Contracts, Third Edition, states in Section 28, 'It is also everywhere agreed that if the parties contemplate a reduction to writing of their agreement before it can be considered complete, there is no contract until the writing is signed.' "

In the case before us, plaintiff would distinguish the Whitemarsh decision for the reason that the bid proposal there involved was unsigned, whereas here it was signed and the accompanying bid bond incorporating the bid proposal was signed by plaintiff. He contends that there was an offer capable of acceptance under contract law thus providing mutuality of obligation. We agree that the Whitemarsh case is factually distinguishable. We cannot agree that it, or the other cases requiring strict compliance with bidding instructions,[3] do not control the disposition of this case.

It is also stated in the Whitemarsh case (pages 377-78):

"It is clearly established in Pennsylvania that if a statute or ordinance provides that a specific method or formal mode be followed in submitting a bid for a municipal contract that such provisions are mandatory and must be observed: Harris v. Philadelphia, 283 Pa. 496, 129 A. 460 (1925). The Municipality Authorities Act, supra, in this connection states only that contracts such as the one involved shall be let upon 'competitive bidding.' Assuming arguendo, that we cannot read into

---

[3] Cited supra.

this requirement that competitive bids for such contracts must necessarily be in writing and properly executed by those to be bound thereby, the instructions promulgated by the Authority itself made this requirement mandatory. Section 10 emphatically provides, as pointed out supra: 'No proposal will be considered which is submitted otherwise than on the prepared form of proposal and in the designated manner. . . . The bidder shall sign his proposal correctly . . . if made by a corporation, the person signing the proposal must be the President or Vice President of the Corporation. No proposal will be considered . . . which is not properly made out and signed in writing by the bidder. . . .' No words could be more clear and explicit. An unsigned proposal *would not be considered*. Such a bid was void."

In the instant case, the bidding instructions required, in the case of an individual, that the "bidder shall sign his proposal correctly", and that "in addition to his signature his post office address must be shown". In our opinion, these specific instructions leave no room for interpretation, as they explicitly and clearly require the individual proprietor to execute his bid. The signature of another person, whether or not he designates himself as an agent of the sole proprietor, does not, in our opinion, meet these specific instructions and are violative of them. Under such circumstances, the bid cannot be considered.

Nor do we believe any weight is lent to plaintiff's argument by reason of the fact that the bid bond submitted with the bid proposal was personally signed by plaintiff and provided that the bid proposal "is made a part hereof." That such a bid bond accompany a bid proposal was but one of many requirements made by the authority in extending its invitation to interested parties to submit bid proposals. It is the bid proposal itself, not the bid bond, which constitutes the essential

document which would be capable of acceptance by the authority, and it is this essential document which the bidding instructions provided should be signed personally by an individual bidder.

Assuming, arguendo, that the bidding instructions under consideration are not so explicit as to preclude an interpretation that bid proposals by individuals may be signed either by the individual himself or by some other person on his behalf, there is no room for the application of such interpretation under the facts here present. To do so would establish a precedent which would encourage fraud and favoritism between bidders and public officials and create uncertainty at the time of bid openings which would lead to the waste of public funds.

Even if one assumes the doubtful assumption that the facts here present support a conclusion that the authority knew, or had reason to know, that McKillop was plaintiff's agent, it is also clear it had no knowledge or reason to believe at the time the bids were opened that McKillop was authorized to execute the bid proposal on plaintiff's behalf. Only after the bids were opened was it established that McKillop was so authorized to act. Could not plaintiff for any number of reasons just as easily have denied McKillop's authority to act on his behalf and thus create doubt and uncertainty as to the apparent low bidder, causing delays postponing the award of the contract until the issue of the agent's actual or apparent authority was resolved? Could not, in such a situation, the public officials and the apparent low bidder connive to deny or assert the authority of the bidder's agent to act on his behalf after the facts are revealed upon the opening of bids?

In our opinion, to afford a bidder the right to establish the authority of his agent to act on his behalf in submitting a bid *after the opening of such bids,*

whether such a practice results from an interpretation of bidding instructions or otherwise, is so fraught with the possibilities of fraud and collusion as to be wholly unacceptable as a permissible procedure in the letting of public contracts. While there is no hint or suggestion of such a situation here, and to grant plaintiff's prayer for relief would effect a saving of public funds, the far-reaching effect of such a decision compels us to deny plaintiff's prayer for relief.

For the foregoing reasons, we make the following

### CONCLUSIONS OF LAW

1. Equity has jurisdiction of this proceeding.

2. Plaintiff, Frank W. Yost, t/a Yost Electric Company, in submitting his bid proposal, did not comply with the instructions to bidders adopted by the State Public School Building Authority for use incident to invitation for bids for electrical work at the Belle Vernon Area Joint High School, Rostraver Township, Westmoreland County, Pa., Project No. K3-750, in that the bid proposal submitted on his behalf was not personally signed by him.

3. Bid proposals for public work contracts executed on behalf of individuals must indicate the capacity by which such person executes the same on the individual's behalf, and the authority of such person to so act on behalf of the individual must be made known to the public body at or before the opening of bids.

4. Plaintiff is not entitled to the relief sought in his complaint.

5. The complaint should be dismissed.

### DECREE NISI

And now, March 29, 1965, it is ordered, adjudged and decreed that the complaint in this matter be dismissed. The prothonotary is directed to enter this decree nisi and to notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed

within 20 days after the entry of this decree, a final decree will be entered.

The costs of this proceeding shall be paid by plaintiff.