Nick GAETA, Appellant,

v.

RIDLEY SCHOOL DISTRICT and
IBE Contracting, Inc.

Commonwealth Court of Pennsylvania.

Argued March 8, 2000.

Decided Aug. 16, 2000.

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(9).

George E. Pallas, Philadelphia, for appellant.

Thomas L. Kelly and Arthur Levy, Media, for appellees.

Before FRIEDMAN, Judge, KELLEY, Judge, McCLOSKEY, Senior Judge.

KELLEY, Judge.

Nick Gaeta (Gaeta) appeals from an order of the Court of Common Pleas of Delaware County (trial court) which denied Gaeta's application for preliminary injunction.[1] We reverse and remand for proceedings consistent with this opinion.

---

1. Pursuant to Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure, an appeal may be taken as of right from an "order granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...."

Ridley School District (School District) requested bids for a school construction project. The Bid Specifications directed that all bids submitted contain a bid bond from a surety company licensed to do business in the Commonwealth of Pennsylvania with a minimum Best Rating[2] of A- or better. The School District reserved the right to waive any irregularities in a bid.

IBE Construction, Inc. (IBE)[3] submitted the lowest bid for one portion of the construction project. However, IBE's bid contained a bid bond from a surety company with a Best Rating of B. The School District requested IBE to supply a new bid bond from a surety with a rating of A- or better, which it did. The School District then accepted IBE's bid.

Thereafter, Gaeta, a taxpayer residing in the School District, filed a complaint in equity with the trial court and filed a petition for a temporary restraining order and preliminary injunction to prohibit the School District from entering into a contract with IBE.

A hearing on the request for the preliminary injunction was held on May 14, 1999. The trial court determined that Gaeta failed to demonstrate that the alleged wrongful conduct was manifest or that he had a clear right to relief. By order dated May 14, 1999, the trial court denied Gaeta's petition for preliminary injunction. This appeal followed.[4]

In this appeal, Gaeta has raised the following two issues for our review:

1. Whether the trial court committed an error of law in its conclusion that IBE was responsive to the Bid Specifications for the project.

2. Whether the trial court committed an error of law in its conclusion that the School District was able to allow IBE to supplement its bid after the bid opening.

Preliminarily, we note that the prerequisites for the issuance of a preliminary injunction are as follows:

(1) It is necessary to prevent immediate and irreparable harm, which would not be compensated by damages;

(2) Greater injury would result by refusing such relief than by granting it;

(3) It properly restores the parties to the status quo as it existed immediately prior to the alleged wrongful conduct;

(4) The activities sought to be restrained are actionable and the injunction is reasonably suited to abate such activity; and

(5) The plaintiff's right is clear and the alleged wrong is manifest.

*Singzon v. Department of Public Welfare,* 496 Pa. 8, 436 A.2d 125 (1981). Each of the five elements must be proven in order to establish entitlement to a preliminary injunction. *Id.*

First, Gaeta contends that the trial court committed an error of law in its conclusion that IBE was responsive to the Bid Specifications for the project. We agree.

Under Pennsylvania law, all contracts of $10,000 or more and relating to the construction of schools must be awarded to the lowest bidder after public notice requesting competitive bids has been given. Section 751(a) of the Public School Code of 1949 (School Code).[5] Laws re-

2. "Best Rating" refers to a rating issued by the A.M. Best Company, a rating service that evaluates the stability and potential profitability of various types of companies including surety companies.

3. According to the record, IBE was erroneously designated in the caption as IBE Contracting, Inc.

4. Our scope of review where a preliminary injunction was granted or denied is limited to whether there was a manifest error of law, clear abuse of discretion, or lack of reasonable grounds. *Board of Directors of School District of City of Scranton v. Roberts,* 13 Pa.Cmwlth. 464, 320 A.2d 141 (1974), *aff'd,* 462 Pa. 464, 341 A.2d 475 (1975).

5. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 7–751(a).

quiring the competitive bidding of public contracts serve "the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption in the awarding of municipal contracts...." *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa. Cmwlth. 641, 401 A.2d 376, 379 (1979).

■■ "It is well settled that the specifications set forth in a bidding document are mandatory and must be strictly followed for the bid to be valid." *Smith v. Borough of East Stroudsburg*, 694 A.2d 19, 23 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 549 Pa. 731, 702 A.2d 1062 (1997); *City of Philadelphia v. Canteen Company, Division of TW Services, Inc.*, 135 Pa. Cmwlth. 575, 581 A.2d 1009 (1990); *Nielson v. Womer*, 46 Pa.Cmwlth. 283, 406 A.2d 1169 (1979). In making determinations regarding the lowest responsive bidder, the school district must examine each bid to determine its responsiveness to the requirements contained in the invitation to bid. *Kimmel v. Lower Paxton Township*, 159 Pa.Cmwlth. 475, 633 A.2d 1271 (1993), *petition for allowance of appeal denied*, 538 Pa. 617, 645 A.2d 1320 (1994). Violation of bid instructions constitutes legally disqualifying error and a public agent may reject a bid for such error. *Id.* As explained in *Hanover Area School District v. Sarkisian Brothers, Inc.*, 514 F.Supp. 697, 703 (E.D.Pa.1981):

> The doctrine mandating strict adherence to bid instructions supports a crucial policy of the Commonwealth. Laws that require competitive bidding for public projects seek to apportion awards fairly and economically. *See, e. g., Lutz Appellate Printers, Inc. v. Commonwealth of Pennsylvania*, 485 Pa. 559, 565–68, 403 A.2d 530 (1979); *Louchheim v. Philadelphia*, 218 Pa. [100,] at 102–04, 66 A. [1121] 1122[(1907)]. Mandatory compliance with statutory procedures and bid instructions serves this goal in two ways. Initially, clear-cut ground rules for competition guarantee that none of the contractors will gain an undue advantage through better information of the bid solicitor's operation. *Conduit and Foundation Corporation v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d at 379–80. Second, the strict adherence principle lessens the possibility of fraud and favoritism. *Lutz Appellate Printers, Inc. v. Commonwealth of Pennsylvania*, 485 Pa. at 567, 403 A.2d 530; *Harris v. Philadelphia*, 283 Pa. at 503–04, 129 A. 460; *Louchheim v. Philadelphia*, 218 Pa. [100,] at 102–04, 66 A. [1121] 1122 [(1907)]. In the opinion of the Pennsylvania judiciary, moreover, the appearance of propriety is so important that genuine deviations may not be tolerated even if all available evidence suggests that the parties acted in good faith.

■ Here, the Bid Specifications expressly mandated that "a bid bond, certified check or cashier's check ... must accompany the bid" and that the surety issuing the bid bond "shall be licensed to do business in the Commonwealth of Pennsylvania with a minimum Best Rating of A- or better." IBE failed to comply with the mandatory bidding instructions by failing to provide a bid bond with an A-rating or better as required by the bidding specifications. We, therefore, conclude that the trial court erred in determining that IBE's bid proposal was responsive to the Bid Specifications.

■ Next, Gaeta contends that the trial court committed an error of law by concluding that the School District was able to allow IBE to supplement its bid after the bid opening. We agree.

Pennsylvania law has established that a bidder cannot correct a defect in its bid proposal after the opening of bids on a public contract. *Kimmel.* However, certain defects in a bid proposal may be waived provided that the defect is a mere irregularity and that no competitive advantage is gained by the non-responsive bidder. *Rainey v. Borough of Derry*, 163 Pa.Cmwlth. 606, 641 A.2d 698 (1994).

In *Rainey,* the low bidder's bid proposal contained two defects: a calculation error and the failure to designate which equipment manufacturers from a restricted list of approximately of 50 borough approved manufacturers would supply the equipment for the project. The low bidder was permitted by the borough to amend these defects and was ultimately awarded the contract. The taxpayers challenged the award arguing that the borough accepted a defective bid proposal.

This Court concluded there was no competitive advantage bestowed upon the low bidder by allowing the low bidder to recalculate the itemized prices to generate an accurate base bid and to submit the equipment list for manufacturers within 24 hours after bid opening. *Id.* Thus, we concluded that the bid defects were not such an aberration from the bid specifications as to violate the applicable law mandating competitive bidding requirements, but rather mere irregularities which were waivable or correctable at the borough's discretion. *Id.*

▇ *Rainey* merely establishes the ability to waive defects only when no competitive advantage is gained by the non-responsive bidder. The law is clear, however, that where the defect is more than just a mere irregularity and lends a competitive advantage to a non-responsive bidder, the bid defect cannot be waived or amended. *Harris v. Philadelphia,* 283 Pa. 496, 129 A. 460 (1925).

In *Harris,* the bid documents required that all bids be accompanied by a certified check for five percent of the total amount of the bid. Although the low bidder submitted a check, it was $12,500 short of the five percent requirement. The bidder immediately deposited an additional check to cover the deficiency after the City informed it of the shortage. The City rejected the low bidder's bid for not including a certified check in the required amount. In affirming the rejection of the bid, the Pennsylvania Supreme Court held:

To permit one bidder to file a check for less than the required amount would give him an advantage over others, and to permit him to supply the deficiency later, and after the bids are opened, would be a step in the direction of opening the door to fraud and favoritism, and of destroying the statutory protection given to the taxpayers. It is no answer to say that the amount of the deficiency was comparatively small, leaving an ample sum to cover any loss to the city which might result if the bidder should default, the purpose of the deposit being merely to guarantee that the successful bidder would enter into the contract if awarded him, and that, as soon as the contract was signed, the deposit was to be returned. Even though the deficiency in the check was comparatively small, if the amount may be made up later, beyond what point are we to say that the discretion of the director should not extend? Should a deficiency of one-fourth or one-half be permitted, or should there be no limit other than that which the director might see fit to impose? If so, what is to prevent him from accepting a bid accompanied by no deposit, providing the bidder is willing to proceed to sign a contract, and thus disregard entirely the express mandatory provisions of the ordinance? The impossibility of thus fixing a definite point beyond which the discretion of the director should not extend is the strongest argument in favor of the wisdom of observing the arbitrary amount fixed by ordinance. We accordingly conclude that the requirement of a deposit is not a mere technical irregularity which is subject to correction after the bids are open, in the discretion of the director, but a mandatory requirement imposed by ordinance, which must be fully complied with by the bidder as a condition precedent to a consideration of his bid.

*Harris,* 283 Pa. at 507, 129 A. at 464.

While the trial court relied upon *Rainey* to support the School District's ability to

allow IBE to supplement its non-responsive bid after the bid opening, we find the present case to be more analogous to *Harris*. Although the Bid Specifications expressly permitted the School District to waive an irregularity in a bid, the failure to obtain a Best Rating of A- or better was not a waivable irregularity, but a material defect. The bid bond was a required instrument. The fact that the School District did not "waive" the defect, but provided IBE with an opportunity to correct the defect only supports this conclusion. Furthermore, by allowing IBE to correct their non-responsive bid after bid opening, IBE received a competitive advantage. A bond from a surety with a B rating does not offer the same protection as a bond from a surety with a Best Rating of A- or better. A bond from a B rated surety is considered more vulnerable and is easier to obtain than a bond from a higher rated surety. As a result, some bidders may have been discouraged from the bidding process or prevented from bidding due to the inability to acquire a bond from a surety with a Best Rating of A- or better. We, therefore, conclude that the trial court erred in determining that the School District could permit IBE to amend its defective bid.

Based upon the foregoing, we conclude that Gaeta has established the prerequisites for a preliminary injunction. Gaeta's right to relief is clear. By permitting IBE to supplement its original bid with a bid bond that would meet the Bid Specifications after the opening of the bidding process, the School District violated the principle against the correction of defects after bid opening and conferred an unfair competitive advantage to IBE. The alleged wrong – violation of statutory law that the bid go to the lowest *responsive* bidder – is manifest. The competitive bidding process was established to guard against "favoritism, improvidence, fraud and corruption in the awarding of public contracts." *See In re 1983 Audit Report of Belcastro*, 528 Pa. 29, 41, 595 A.2d 15, 21 (1991). The preservation of the integrity of the competitive bidding process far outweighs the potential cost differential between the lowest bid and the lowest responsive bid. We, therefore, conclude that the trial court's denial of the preliminary injunction was erroneous.

Accordingly, we reverse the trial court's order and remand the case for further proceedings.

### *ORDER*

AND NOW, this 16th day of August, 2000, the order of the Court of Common Pleas of Delaware County, Docket No. 99–6346, entered October 21, 1999, is hereby reversed. This case is remanded for the trial court for further proceedings consistent with this opinion.

Jurisdiction is relinquished.