# Commonwealth of Pennsylvania ex rel. George McChesney v. Diamond National Bank, Appellant.

*Boroughs—Payment of warrant enforced by mandamus.*

Payment of the debts of a borough, lawfully incurred in the daily administration of its affairs, is purely ministerial, ordinarily involving no executive action and devolves upon council and the treasurer.

A warrant given in payment of a lawful debt of a borough incurred in its ordinary business affairs, signed by the president of the council is sufficiently executed and the treasurer will be directed by mandamus to pay such warrant.

*Public officers—Boroughs—General power of burgess defined.*

The burgess of a borough may exercise judicial, executive and ministerial power in the full discharge of his duties under the law; but his authority to exercise either must clearly appear.

*Power of burgess in regard to signing and vetoing ordinances, etc.*

The power conferred by law on a burgess by the Act of May 23, 1893, P. L. 113, to sign and veto ordinances and regulations, etc., refers to measures which are legislative in character, such as a permanent rule of conduct for the government of the citizens; or of the borough in general; or the creation of liability, through contract or otherwise. Acts of councils temporary and ministerial in character which relate to the orderly transaction of internal current business of councils do not require executive approval.

Submitted April 11, 1898. Appeal, No. 71, April T., 1898, by David Shaw, from decree of C. P. No. 2, Allegheny Co., July T., 1897, No. 701, directing that a mandamus should issue. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Petition for mandamus.   Before FRAZER, J.

The facts sufficiently appear from the opinion of the court. Davis Shaw, burgess, appealed.

*Error assigned* was entering decree directing a writ of man-damus to issue.

*Frank Thomson* and *W. H. S. Thomson,* for appellant.—Until the time of this contention all warrants ordered by the council uniformly have been signed by the burgess.   Our contention is that the burgess never signed warrants by virtue of his being a member of council, but that this was one of the general powers properly exercised by him, by virtue of his being the chief executive officer of the borough.

It is further submitted by appellant that even if the council of the borough had legal authority to strip the burgess of the power of signing warrants and vest the power in the hands of its chairman, this could only be done by ordinance or resolution properly passed and signed by the burgess or regularly passed over his veto, in accordance with the provisions of the Act of May 23, 1893, P. L. 113.   As shown by the record in this case, this provision of the law was not complied with, and therefore, the resolution never had any legal force or effect, even if council had the legal right to pass it.

*H. E. Lineaweaver,* for appellee, submitted no paper-book.

OPINION BY SMITH J., December 15, 1898 :

Upon the petition of George McChesney, averring that on June 12, 1897, the town council of the borough of McKee's Rocks issued a warrant to him, signed by the chairman of the council and attested by the clerk of that body, directing the treasurer of the borough, the Diamond National Bank, to pay to the relator the sum of $50.00 out of the funds in its hands belonging to the borough, and that the said treasurer refused to pay the same, for the reason that the warrant was not signed by the burgess of the borough, and the said burgess had notified the respondent not to honor any warrants not signed by him, notwithstanding the council had, by motion, duly recorded in its minutes at a regular meeting on June 12, 1897, directed

that thereafter all warrants issued by council should be signed by the chairman, instead of the burgess as theretofore; an alternative mandamus was asked. To this the respondent answered, admitting, in substance, the averments of the petition. The burgess, David Shaw, asked to be allowed to conduct the proceedings in the name of the respondent, in the same manner as if he were an original party, and the court made an order to that effect. Subsequently the court ordered a mandamus to issue as prayed for, and from this decree the respondent, David Shaw, appealed. It is conceded that these warrants had been signed by the burgess of the borough from the time of its organization in 1892, until the adoption of the motion directing that this be done by the chairman of the council.

The duties and privileges of a burgess touching the financial affairs of the borough must be found in the charter, or in existing ordinances or resolutions. Unless required by law, the custom of having the burgess sign warrants issued by the council will not confer upon him the right to its continuance, when that body provides that warrants shall be signed by their presiding officer. The confusion relative to the powers of a burgess, arising out of conflicting provisions of the numerous special charters existing in this State, has been largely removed by the acts of May 23, and of June 6, 1893. Under those statutes the burgess cannot be a member of council or preside at its meetings, and his powers touching the passage of ordinances and resolutions are there defined and limited. The act of May 23, 1893, expressly provides that councils shall annually elect one of their number as president of the council, whose duty it shall be to preside at their meetings. To require the president to sign warrants and other documents agreed upon at council meetings is in perfect consonance with this provision of the law. By the statutes referred to the burgess may approve or veto the ordinances and resolutions passed by the council, but those statutes do not extend his power to other transactions of that body. The authority of a burgess to approve or veto ordinances and resolutions is new to our general laws. It tends to assimulate the powers of the burgess of a borough to those of the mayor of a city; and to some extent to harmonize and simplify the duties of those officers. Prior to 1893, a burgess was required "To sign the several by-laws,

rules, regulations and ordinances adopted, after they shall have been duly and correctly transcribed by the secretary;" but he had no authority to veto an ordinance or other measure passed by the council. The pertinent and material question in this case is, therefore, whether a warrant issued by a borough council comes within the meaning of "by-laws, rules, regulations and ordinances," which, under the act of April 23, 1851, sec. 4, P. L. 320, the burgess is required to sign. The burgess of a borough may exercise judicial, executive and ministerial power in the full discharge of his duties under the law. But his authority to exercise either must clearly appear. The measures passed by council which he has a right to sign are enumerated in the act of 1851, and on the principle, expressio unius est exclusio alterius, his power must be confined to such as are there set forth, or are necessarily incident thereto.

It seems clear that the clause of the act of 1851, relative to the burgess signing by-laws, ordinances, etc., when viewed in connection with other provisions of that act, refers to measures which are more legislative in character; such as a permanent rule of conduct for the government of the citizens, or of the borough in general; or the creation of liability, through contract or otherwise. If the measure be legislative in purpose or effect it is immaterial whether it be called an ordinance, resolution, by-law or rule: Howard v. Olyphant, 181 Pa. 191. But the motion adopted in the present case cannot be considered legislative in character. It relates to the orderly transaction of the internal current business of the council, and its due authentication. Acts relating to the daily administration of municipal affairs are ordinarily known as the "business" of the council. They are temporary and ministerial in character and do not require executive approval: Shaub v. Lancaster City, 156 Pa. 362. Payment of the debts of the borough, lawfully incurred in the daily administration of its affairs, is purely ministerial, ordinarily involving no executive action, and devolve upon the council and the treasurer. This construction of the act of 1851 may also be illustrated and fortified by its own provisions relating to the general power of the burgess. His first prescribed duty is "to enforce the by-laws, ordinances, rules and regulations of the corporations;" the precise terms used in the enumeration of what he shall sign. Thus

indicating that the measures which he shall sign and those he shall enforce are the same, and relate to the governmental control of the borough, rather than its ministerial affairs. Further corroboration of this view may be drawn from the act of May 23, 1893. By this act the burgess is precluded from presiding at, or participating in, the meetings of the council, and is thereby excluded from all voice in the transaction of its business. But the same statute imposes upon him the executive duty of approving or vetoing "every ordinance and resolution passed by said council." He is given no authority over the action of the council, except in relation to ordinances and resolutions, which he may sign or veto according to his judgment. Under every judicial interpretation of those terms they are synonymous when legislative in purpose or effect, and in the legislative sense do not embrace mere ministerial duties such as current business transactions. It is not denied that the warrant in the present case was given in payment of a lawful debt of the borough incurred in its ordinary business affairs. It was signed by the president of the council in pursuance of the motion in question, and this was sufficient to its due execution.

The order directing a mandamus to issue is affirmed, the cost to be paid by David Shaw, the appellant.