Stange et al., Appellants, *v.* Philadelphia.

Argued April 29, 1932. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Walter B. Saul,* with him *George C. Klauder,* for appellants.—The contract provided that the plaintiff was to be paid for "materials actually furnished." The city agrees that "the plaintiff actually placed 402,450 cubic yards of material in the bed of Pattison Avenue, within the points stipulated in the contract." If this be so, nothing short of shocking injustice could prevent the payment in accordance with the terms of the contract.

There was no guarantee by the plaintiff that the fill would remain in place after delivery.

*James Francis Ryan,* Assistant City Solicitor, with him *A. Evans Kephart,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellee.—It seems clear that plaintiffs contracted for the work included within the fixed lines (at the unit price) with no allowance for filling outside of or below these lines and for all the work necessary and incidental to bring this street to the established grade from houseline to houseline, after having examined the site and the material to be encountered and basing their bid thereon. The city only asks that they now be held to that agreement.

The city contends that all the relevant provisions of this contract and specifications should be read together. If such is done in accordance with our law as set forth in Moran v. Bair, 304 Pa. 471, 475, and McMillin v. Titus, 222 Pa. 500, 502, 503, the conclusion is inevitable that the plaintiff has been paid "at the unit price bid for quantities of work actually performed or material actually furnished" for the designated specifications.

OPINION BY MR. JUSTICE LINN, June 30, 1932:

Plaintiffs appeal from judgment for defendant on a case-stated, brought to recover a balance claimed for

doing all ".......work necessary to bring this street [Pattison Avenue] to the established grade from house line to house line and such other incidental work as is required to complete the contract in accordance with ......specifications......" The work contemplated ".......was the filling in of the bed of Pattison Avenue from Seventh Street to Delaware Avenue, so as to bring the surface thereof to the finished grade established by the officials of the city." The specifications required that "Bidders must examine the location of the proposed work and make themselves acquainted with the conditions on the ground and the character of material to be encountered." They also provided that "The unit price bid for grading shall include the work of clearing, grubbing, removing and disposing of brush, trees and existing pavement and matter of whatsoever nature encountered,......all excavations and embankments or filling necessary to form roadway berms, side slopes......No allowances will be made for any excavation or filling done *outside of* or *below* or above the lines and grades given by the district surveyor, unless ordered done in writing by the engineer." Appellant's unit price bid was $1.05 per cubic yard of fill.

We were informed at the oral argument that the fill was from the natural surface of the land to the established grade and that the ground was swampy. The case states that 402,450 cubic yards of material were dumped within the street lines, and 12,639 cubic yards in the slopes outside the street lines, and that the original level of the street, in consequence of the weight of the fill deposited, settled or sank before the work was finished, to such an extent that 80,022 cubic yards of the material placed in the bed of the street were below the original line of the natural surface, and that only 322,428 cubic yards remained above that line when the work was stopped. The city paid appellants at the unit price for the 322,428 cubic yards above the original level, on its interpretation of the contract that the amount payable

for all the work was the cubic yardage within the space specified at the unit price per yard. Appellants brought this suit to recover for the 80,022 cubic yards that settled below the level of the original surface during the performance of the work.

There can be no difficulty about the interpretation of the contract if we place ourselves in the position of the parties when it was made and consider what was contemplated. Statutory provisions for municipal contracts are mandatory and must be observed; one of their purposes is to obtain "......open and honest competition in bidding so that fair prices should be procured and the city protected from collusive bidding as well as favored bidders": Harris v. Philadelphia, 283 Pa. 496, 503, 129 A. 460. For the guidance of bidders, the city promulgated the specifications to be observed, advising them to examine and acquaint themselves "with the conditions on the ground and the character of the material to be encountered." Such examination would enable bidders to determine whether the ground, as they tested it, would support the earth proposed to be dumped on it; or whether, because of the swampy character of the soil, the earth first dumped would settle so that, by what may be called a preparatory fill, an adequate foundation must first be prepared to support the fill required to bring the street to the established grade. They would also see, as the record shows they did, that to support the earth within the street lines, it was necessary to create slopes outside those lines, and that, for such work, compensation must be included in the unit price to be applied to the fill within the street lines, because no allowance was to be made "for filling done outside of......the lines."

It was a simple matter to calculate the cubic yardage that would be required to fill within the street lines from the level of the natural surface to the established grade. Anyone could make that calculation. But to ascertain the cubic yardage that a contractor would be required to fill, in order ultimately to comply with the

contract, involved the uncertain element to be determined only by considering "The conditions on the ground and the character of material to be encountered." To make an intelligent estimate for bidding purposes, the bidder must know, not only the cubic contents between the two levels, but the entire yardage, allowing for settling, and also for slopes to support the earth dumped within the street lines. This was important in another aspect with which appellants and all bidders must be familiar. The city is required to keep the expenditure within its appropriation available for the purpose. If the city took the risk of the uncertainty of the quantity of fill resulting from the insecurity of the natural foundation, and also of the quantity required for slopes, instead of requiring the contractor to take them, the city could not certainly know whether its available appropriation for the improvement was sufficient; but, if those risks are required to be assumed by the contractor, and the total cost to him is reflected in his unit price bid, the sum payable by the city can easily be calculated, and the contract awarded or not as circumstances may justify.

The case-stated shows that appellants understood this, for it is agreed that 12,639 cubic yards of material outside the lines of the street constituted the slopes and were needed to support the fill within the lines; and appellants agree that they are not entitled to be paid for the slopes. But the contract, in the same sentence (quoted above), provided that no allowance should be made for filling below the line of the street. The parties' interpretation of their contract will be enforced: McMillin v. Titus, 222 Pa. 500, 72 A. 240.

We agree with the learned judge, who wrote the opinion in the court below, that it is clear "......that the fill for which the plaintiff is entitled under the contract to be paid is limited to 'work actually performed' not 'outside or below or above,' but within 'the lines and grades given by the district surveyor.'"

There was no implied warranty by the city that the original surface would support the earth to be dumped there (cf. Cramp v. Central Realty Corporation, 268 Pa. 14, 20, 110 A. 763), on the contrary, as has been stated, all bidders were advised to study the ground; the necessity to allow for settling was obvious. We must assume that appellants made the necessary investigation required by the bidding specifications and in making their unit price bid considered this contingency. If we held otherwise, we should destroy the effect of the rule "......that there should be open and honest competition in bidding so that fair prices should be procured and the city protected......"

Appellants' contention that, as the case-stated "sets forth that 'the plaintiff actually *placed* the entire balance of 402,450 cubic yards of material in the bed of Pattison Avenue, within the points stipulated in the contract,' it is not within the power of the court to find as a fact, for the basis of its decision, that '80,022 cubic yards were placed *below* the line given,' " does not merit serious consideration. We cannot quibble with the word 'placed'; the statement of fact is to be read and interpreted in the light of the contract which is part of the case-stated, for that is what parties dealing in good faith must have intended in stating the case.

The judgment is affirmed.