## Meixell, Appellant, *v.* Hellertown Borough Council.

Argued May 28, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeal, No. 186,

*Philip J. Gahagan,* for appellant.

*Milton J. Goodman,* with him *Bernard V. O'Hare, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 26, 1953:

On June 4, 1951, Myron D. Parsons, Chief Burgess of Hellertown, Pennsylvania, resigned his office; and his resignation was accepted by the Borough Council effective as of June 30, 1951. On June 18, 1951, at a regular meeting of the Borough Council (which is made up of nine members), the President announced that the Council would consider the election of a Burgess to serve out the unexpired term of Parsons. Three candidates thereupon were placed in nomination, and, after the voting, it was announced that Althrope Meixel, (a non-councilman), had received four votes, Raymond S. Judd, (a councilman) three votes, and Victor J. Abel (another councilman) two votes. The Council President, Gerald Wartman, declared that no one had received a majority of the votes, and the Council decided to defer action

until the next regular meeting of the Council scheduled for July 2, 1951.

On July 16, 1951, Meixell filed a Complaint in Mandamus in the courts of Northampton County asking that he be declared the duly elected burgess, since two of the councilmen (Abel and Judd) had disqualified their vote by voting for themselves, contrary to the laws of the Commonwealth. On appeal from the decision of the Court of Common Pleas which sustained the preliminary objections to Meixell's Complaint, this Court upheld the appellant's position, but on May 26, 1952, we handed down a supplemental order granting the defendant leave to make answer to the Complaint.[1] The defendant filed its Answer and New Matter, the plaintiff filed a Reply to the New Matter, and the resulting issue came on for trial before Judge WOODRING, sitting without a jury. On September 15, 1952, the Court entered judgment in favor of the defendant, and the plaintiff has appealed again to this Court.

The salary of the Chief Burgess of Hellertown is only $400 a year, so that it is apparent that the appellant did not initiate and carry forward these expensive legal proceedings for financial profit. But with monetary emoluments go the honor and prestige associated with that of being chief executive of one's own town. Hellertown does not have the size of New York nor the historical grandeur of Rome but for its inhabitants it is a world in itself, and any one can well be proud of the distinction of being its first citizen. However, even glory can be, and in some situations must be, regulated by statute. The General Assembly of Pennsylvania, by Act of July 10, 1947, P. L. 1621, §22 (53 PS 12871) provides, inter alia, that: "If any vacancy shall occur in the office of burgess . . . by death, resignation, removal

---

[1] *Meixell v. Hellertown Boro, Council*, 370 Pa. 420, 434.

from the borough . . . or in any other manner whatsoever, the borough council shall fill such vacancy by appointing, by resolution, a registered elector of the borough . . . to hold such office for the unexpired term of the office."

When this case was argued here in January, 1952, the minutes of the Council meeting of June 18, 1951, were not before us, so that the record did not show that the indispensable requirement of a resolution had not been complied with. "Whenever the controlling law directs the legislative body to do a particular thing in a certain manner the thing must be done in that manner." McQuillin, Municipal Corp. (2nd Ed.) Sec. 663, p. 659.

"The limited power and authority with which municipal corporations, as agencies of the state, are invested, must be exercised strictly within the lines and limitations prescribed by the law making power." *Altoona City vs. Bowman,* 171 Pa. 307, 311.

The minutes of June 18, 1951, not only reveal that no resolution (or similar procedure to effect an election) was before the Council, but they disclose affirmatively that the business of appointing a burgess was deferred to a later date: "The President declared that none of the candidates received the required number of votes to be elected; whereupon it was moved by Gregory, seconded by Ward, that Council defer action on the selection of a Burgess until the next regular meeting on July 2nd—motion carried." Councilman Ward, who seconded the motion for the postponement until July 2nd, was one of those *who had voted for Meixell,* so that, in the eyes of one of Meixell's supporters, it was understood that no selection had taken place.

At the July 2nd meeting, another postponement occurred, and this time, the motion for postponement was made by Ward himself and it was seconded by Unangst,

another one of the councilmen *who had voted for Meixell* on June 18th.

Finally, on July 23, 1951, the Council met for the specific purpose of selecting a successor to Myron D. Parsons. Councilman Ward, who had originally voted for Meixell, now placed in nomination the name of Asher S. Kichline, and Councilman Hine nominated Meixell. Eight voted for Kichline and one voted for Meixell. A resolution was then drafted declaring Kichline[1] elected or appointed, and this resolution was adopted by a vote of 8 to 1.

There can be no question about the regularity of Kichline's election on July 23, 1951—and this necessarily displaces the action of June 18th on Meixell. Even if it were to be assumed, arguendo, that the voting on June 18th represented a selection of Chief Burgess, the Council had the right to reconsider its vote, as it has the right, under proper parliamentary procedure, to reconsider any vote. After the voting on June 18th, the President declared that no one had been elected. As well stated by the lower court in its Opinion, ". . . the ruling of the president, whether right or wrong, was acquiesced in by the whole body of Council and thereby became the action of the body. No dissent or protest was made to the ruling of the Chair and Council affirmatively accepted that ruling by adopting the motion to defer action on the selection of Burgess until the meeting of July 2."

Under the title: "Reconsideration of Appointment," 89 A.L.R. 150, carries the statement: "Where a ballot taken by a collective body for the purpose of electing a person to office is defective or irregular, or where there

---

[1] Asher S. Kichline has since died and on June 2, 1952, Warren C. Fritchman was appointed Burgess by a vote of 7 to 0, 2 not voting.

is some question in the minds of the members as to its **regularity, there would** seem to be no question but that the appointive body should be permitted to take another ballot and that an appointment made on such questionable ballot should not be considered as final and irrevocable. This seems to be the universally recognized rule. . . . State ex rel. Scofield v. Starr . . . 78 Conn. 636 . . . State ex rel. Cole v. Chapman . . . 44 Conn. 595 . . . Allen v. Morton, 94 Ark. 405 . . . Keough v. Holyoke . . . 156 Mass. 403."

The meeting of June 18th had not been called specially for the purpose of electing a burgess. This fact, of course, would not illegalize an election if one had taken place on resolution or the equivalent thereof. But the hearing in the lower court which followed the first decision of this Court in the matter, now demonstrates that the voting on June 18th was in effect but a casting of straws into the air to determine which way the political winds were blowing. Karl Hine, the councilman who had placed Meixell's name in nomination, testified at the hearing: "A. After I learned that the results of the election were four, three, and two, I asked if it were not possible to name Mr. Meixell burgess. I said, 'Does that mean that Mr. Meixell cannot be named the burgess?' and the answer was, 'You are right.' Q. Who gave you that answer? A. The President of Borough Council, after consulting with the solicitor." The minutes of the meeting of June 18th cover 12 printed pages, dealing with many municipal subjects for consideration. Less than two of those pages are devoted to the so-called election.

In the case of *Miners Savings Bank v. Duryea Borough,* 331 Pa. 458, we said: "It is a fundamental principle that the authority of a municipal body is to be found in the statute which confers it, and must be exercised strictly in the manner therein provided: Carpenter

v. Yeadon Borough, 208 Pa. 396; Ohlinger v. Maiden-creek Twp., 312 Pa. 289."

The record is noon-day clear that on June 18, 1951, the date Meixell claims to have been elected, no resolution was introduced or passed upon. This conclusion is based not on the fact that the word "resolution" does not appear in the minutes, but on the established reality that no action was taken by motion, resolution, agreement, amendment or in any other parlimentary way which would show that the Borough Council had filled the vacancy of burgess in accordance with the provisions of the Act of 1947, supra.

The order of the court below is affirmed, with costs on the appellant.