## Burke, Appellant, v. North Huntingdon Township.

Argued September 30, 1957. Before Jones, C. J., Bell, Chidsey, Arnold, Jones and Cohen, JJ.

*Christ. C. Walthour, Jr.,* with him *Fred D. Trescher, Frank W. Ittel, Kunkle & Trescher* and *Reed, Smith, Shaw & McClay,* for appellant.

*Robert W. Smith, Jr.* and *Joseph M. Loughran,* with them *Smith, Best and Horn,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 18, 1957:

Joseph E. Burke and the North Huntingdon Township Municipal Authority (herein called Township Authority),[1] on June 3, 1954, entered into a written contract. The Township Authority, intending to enlarge its water works by constructing additional water lines, a filtration plant and a dam, selected Burke as its engineer for the project. Under the contract Burke agreed to furnish and perform certain specified professional engineering services in connection with the project for which the Township Authority agreed to pay him for such services "Six (6%) per Cent of the cost of the construction of the entire water system . . . ." The total estimated cost of such construction was $760,-000.

Almost two years later—May 28, 1956—the Township Authority sold its water works to the Municipal Authority of Westmoreland County (herein called County Authority) under a contract to which North Huntingdon Township (herein called Township) was a signatory. Paragraph XII of this agreement recites: "The seller and the Township will pay out of the monies paid to them jointly . . . [iii] the reasonable fees and expenses of consulting engineers employed by the seller in connection with the transactions contemplated hereby and for past services but not to exceed Twenty thousand ($20,000) Dollars."

---

[1] Created under the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §2900z.

Sometime prior to May 28, 1956, the County Authority sent to the Township and the Township Authority a "letter of intent".[2] This "letter of intent" contained four provisions presently relevant: a reference to Paragraph XII of the proposed agreement dated but not signed on May 24, 1956, a reference to Burke's claim of $34,200,[3] an opinion that Burke's claim was excessive and that its payment should be refused, and a statement, purporting to clarify the parties' understanding under Paragraph XII, that the County Authority "will pay any sums or amounts which you [Township and Township Authority] are found to be responsible to pay, including Mr. Burke's fee, attorney fees, and court costs in excess of $20,000" and, in the event of a settlement, will "pay all amounts agreed upon in excess of $20,000.00".

Burke's claim not having been paid, he instituted an assumpsit action, joining as defendants therein the Township, the Township Authority and the County Authority. Three causes of action were stated in the Complaint. The cause of action stated against the Township Authority is based upon the contract of June 3, 1954 between the Township Authority and Burke; the cause of action stated against the Township is based upon two grounds: (a) that the Township became liable to Burke by virtue of the provisions of the "Municipality Authorities Act of 1945", providing for the assumption of an Authority's projects by the municipality which created it and (b) under the terms of the contract of May 28, 1956 between the Township Authority and the County Authority to which the Township was a signatory; the cause of action stated against the

---

[2] For a discussion of the use of "letters of intent": 9 Williston on Contracts (Rev. Ed.), §198, pp. 290, 291.

[3] In the present suit Burke claims $42,500.

County Authority is based upon the terms of the same contract between the Township Authority, the County Authority and the Township.

The Township Authority having filed an answer upon the merits, the question of its liability to Burke is not presently at issue.

Both the Township and the County Authority filed separate preliminary objections each of which raised two questions of law: (a) that the Township and County Authority were improperly joined as parties defendant and (b) that Burke's complaint failed to set forth a cause of action against either the Township or the County Authority. The court below sustained the preliminary objections and directed that plaintiff's complaint as to the Township and the County Authority be stricken. From that decree this appeal was taken.

The procedure for the joinder of defendants is prescribed by Pa. R. C. P. 2229, subsections (b) and (d), which read as follows: (b) "A plaintiff may join as defendants persons against whom he asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action. . . . (d) A person who asserts a cause of action ex contractu may join as defendants all or any one or more persons alleged to be liable to him on or by reason of the breach of the contractual obligation sued upon, regardless of the capacities in which such persons are respectively liable or whether they are primarily or secondarily liable or whether their liabilities arise from the same or separate acts or undertakings; . . . ."

While the complaint states three different causes of action, yet all the causes of action arise out of the

"same transaction" and a "common question of law and fact affecting the liabilities" of all three defendants will arise in the action.[4] The three defendants have been properly joined.[5] Each of plaintiff's causes of action is sufficiently common to the other causes of action as to constitute a related series of actions.

The complaint as against the Township states two causes of action each of which will be discussed separately.

Section 18 of the Municipality Authorities Act of 1945, supra, as amended, 53 PS §2900z-19 provides: "(A) If a project shall have been established under this act by a board appointed by a municipality or municipalities, which project is of a character which the municipality or municipalities have power to establish, maintain or operate, and such municipality or municipalities desire to acquire the same, it or they may by appropriate resolution or ordinance adopted by the proper Authorities, signify its or their desire to do so, and thereupon the [Authority], shall convey by appropriate instrument said project to such municipality or municipalities, upon the assumption by the latter of all the obligations incurred by the Authorities with respect to that project." Burke contends that the Township, by signing the contract of May 28, 1956, in effect acquired the water works under this statute and therefore assumed the Authority's obligations with respect to this project.

---

[4] *National Container Corporation of Pennsylvania v. Regal Corrugated Box Company*, 383 Pa. 499, 502, 119 A. 2d 270; *Horner Sales Corporation et al. v. Motor Sport, Inc.*, 377 Pa. 392, 105 A. 2d 285; *Slingluff v. Dennis*, 376 Pa. 91, 96, 101 A. 2d 755; *Siranovich et al. v. Butkovich*, 366 Pa. 56, 63, 76 A. 2d 640; 4 Anderson, Pennsylvania Civil Practice, p. 378.

[5] It is highly questionable whether an improper joinder may be attacked by preliminary objections rather than by a motion for severance.

This statutory provision outlines the method to be pursued where a municipality—the Authority's creator—desires to acquire a project of the Authority; it must be accomplished by an appropriate resolution or ordinance adopted by the Authority. In *Carpenter v. Yeadon Borough*, 208 Pa. 396, 399, 57 A. 837, we stated: "The authority of a municipal body to legislate or to contract is conferred by the lawmaking power of the state, hence it must be exercised in the manner provided in the statute conferring it. A municipal corporation is simply the agent or instrumentality of the state to administer local government and to exercise certain powers and to perform certain duties within defined territorial limits in conformity with the method and to the extent delegated in the legislation creating and applicable to the corporation. Its contractual powers are derived from the same source and are circumscribed by the same limitations." See also: *Meixell v. Hellertown Borough Council*, 374 Pa. 412, 417, 418, 97 A. 2d 822; *Coyle v. Pittsburgh*, 344 Pa. 426, 427, 428, 25 A. 2d 707; *Miners Savings Bank of Pittston v. Duryea Borough*, 331 Pa. 458, 462, 200 A. 846; *Philadelphia Co. v. City of Pittsburgh*, 253 Pa. 147, 152, 97 A. 1083.

In *Harris v. Philadelphia et al.*, 283 Pa. 496, 503, 129 A. 460, it was stated: "It has been uniformly held, and may now be regarded as the general rule in this State, that, where a statute provides a method or formal mode of making municipal contracts, such provision is mandatory and must be observed, otherwise the contract is not enforceable against the municipality . . . ." See also: *Luzerne Township v. Fayette County*, 330 Pa. 247, 251, 252, 199 A. 327; *Wilkes-Barre Connecting Railroad Co. v. Kingston Borough*, 319 Pa. 471, 474, 181 A. 564; *Stange et al. v. Philadelphia*, 308 Pa. 339, 343, 162 A. 833.

No resolution or ordinance having ever been adopted by the instant Authority there could be no acquisition of any project of the Authority by the municipality. To hold otherwise would be to ignore completely the statutory mandate. The bare execution by the municipality of the contract between the Township Authority and the County Authority cannot be substituted for the requisite "resolution or ordinance of the Authority." We cannot satisfy the statutory mandate by a fiction, to wit, that because the Township signed the agreement it necessarily must have acquired the project of the Authority. The Township's execution of the agreement between the Township Authority and the County Authority was simply a waiver by the municipality of its rights to acquire the project from the Authority and there was no statutory assumption by the municipality of any of the obligations incurred by the Authority in respect to its project. In this respect Burke has failed to state a valid cause of action against the Township.

The next facet of Burke's argument dealing with the liability of the Township applies equally to the liability of the County Authority. Burke claims that, even though he was not a party to the contract of May 28, 1956 nor the understanding contained in the "letter of intent", yet he stands as to both in the position of a creditor beneficiary entitled to sue both the Township and the County Authority.

Assuming, arguendo, the Township to be a primary party to both the contract and the "letter of intent" is Burke a creditor beneficiary entitled to maintain a suit against both Township and County Authority?

That a third party, not in privity to the original contract, may sue as a creditor beneficiary is now the rule in Pennsylvania: *Mowrer v. Poirier & McLane Corporation*, 382 Pa. 2, 114 A. 2d 88; *Spires et ux. v. Hanover Fire Insurance Company*, 364 Pa. 52, 70 A. 2d

828; *Commonwealth v. Great American Indemnity Company*, 312 Pa. 183, 167 A. 793; *Concrete Products Company v. U. S. Fidelity & Guaranty Company*, 310 Pa. 158, 165 A. 492; 4 Corbin on Contracts, §828. The application of this rule depends on whether the third party is in fact a creditor beneficiary, a status which in turn depends on the intention of the parties to the contract as expressed therein.

In *Spires et ux. v. Hanover Fire Insurance Company*, supra, pp. 56, 57, it was stated: "To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary, but both parties to the contract must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear in the contract itself . . .".

Burke's right to sue the Township and the County Authority depends upon a construction of the contract to determine from its terms and the circumstances under which it was made what the parties intended. An examination of Paragraph XII of the contract, illuminated by the "letter of intent", reveals the following undertakings by the parties: the seller (Township Authority) and the Township are to "pay out of the monies paid to them jointly" by the County Authority the "reasonable fees and expenses of consulting engineers employed by the seller" up to the amount of $20,-000; the buyer (County Authority) is to "pay any sums or amounts which [the Township Authority and the Township] are found to be responsible to pay, includ-

ing Mr. Burke's fee" in excess of $20,000, or, in the event of a settlement "all amounts agreed upon in excess of $20,000." Burke's claim against the Township and County Authority is based upon the promises exchanged by them in this contract. When the County Authority exacted from the Township and the Township Authority a promise to pay reasonable fees and expenses of the consulting engineers up to $20,000 and when the Township exacted from the County Authority the promise to pay engineering fees in excess of $20,000, did the parties intend thereby to confer a benefit upon Burke? Taking into consideration the circumstances under which this contract was made and its terms it is obvious that the parties had no intent to confer a benefit upon Burke. The contract simply allocates between the respective parties the claims or obligations to be paid by each, respectively, once liability for their payment has been established either by way of litigation or settlement. The contract simply purports to set up an intra-party plan for the payment of the seller's obligations.

Burke is not a creditor beneficiary under this contract but simply occupies the status of an incidental beneficiary.[6] As an incidental beneficiary Burke acquired "by virtue of the promise no right against the promisor or the promisee": Restatement of the Law, Contracts, §147; *Spires et ux. v. Hanover Fire Insurance Company*, supra; *Klingler v. Wick*, 266 Pa. 1, 5, 6, 109 A. 542. Burke, as an incidental beneficiary, has no right to sue either the Township or the County Authority upon the basis of their contract.

An additional reason precludes Burke's suit against the County Authority. The County Authority's promise to pay engineering fees and expenses was a condi-

---

[6] Restatement of the Law, Contracts, §133 (1) (c).

tional promise; the County Authority is to pay engineering fees and expenses only after the establishment of liability on the part of the Township and/or the Township Authority or in the event a settlement of Burke's claim is reached and neither of these events has occurred. In reality, the County Authority's undertaking was to indemnify both the Township and the Township Authority against loss in excess of $20,000. Until such time as the liability of the Township and/or the Township Authority is established or a settlement reached, no liability to pay these fees and expenses arises on the part of the County Authority.[7] Ordinarily a third person has no right to sue upon an indemnity agreement; the present situation furnishes no exception to that rule.[8]

Burke has not stated a valid cause of action against either the Township or the County Authority. The action of the court below in sustaining the preliminary objections was eminently proper.

Decree affirmed. Costs to be paid by appellant.

---

[7] Proof of actual loss is prerequisite to recovery upon an indemnity undertaking: *Wilbur Trust Company, to use, v. Eberts et al.*, 337 Pa. 161, 10 A. 2d 397; *Manufacturers and Merchants Building and Loan Association v. Willey et al.*, 321 Pa. 340, 183 A. 789; 2 Williston on Contracts (Rev. Ed.), §402, p. 1157, §403, p. 1159.

[8] "A mere promise to indemnify against damages must also be distinguished. Here the promisor's liability does not arise until the promisee has suffered loss or expense. Until then the promisee has no right of action, and consequently one claiming damages can assert no derivative right against the promisor, much less a direct right . . . ." 2 Williston on Contracts (Rev. Ed.), §403, p. 1159.