## Barnes v. Craft

*Morrison B. Williams*, for plaintiff.

*Earl R. Doll*, for defendants.

SHADLE, J., June 26, 1961.—Defendants, as general contractors, entered into written contracts with Northern York County Joint School Authority for a portion of the construction of a school building. Plaintiff alleges in his complaint, in rather cautious and carefully selected language, that "Said contracts contain a clause for the employment of competent workmen in the words of the Act of 1949," hereinafter referred to, and then quotes the terms of the act but not of the contracts. Plaintiff was employed by defendants as a workman on the job and was paid at a stated rate, which plaintiff alleges was less than the specified rate then currently paid by employers of organized labor. Plaintiff sues to recover the difference between the wage he received and that which he claims should have been paid him under the terms of the contracts and the above statute.

Defendants have filed preliminary objection to the complaint in the nature of a demurrer, on the ground that no cause of action is alleged. Specifically, defendants claim that the section of the act in question does not have the meaning or effect plaintiff ascribes to it, and that the act relates only to a school district, which the contracting party was not, and not to a municipal authority, which the contracting party was.

It seems incapable of dispute that the building owner was a municipal authority and not a school district, and that the two are separate and distinct

legal entities. There can be no argument that the act in question relates only to ". . . contracts, hereafter awarded . . . by any school district, . . ." However, the question becomes one of what the contracts between defendants and the owner actually provided. If the agreements by their terms specifically required defendants to pay certain wages, then this is what defendants were bound to do. A municipal authority is authorized to contract for such a provision by section 10E of the Municipal Authorities Act of May 2, 1945, P. L. 382, 53 PS §312. On the other hand, if the agreements by their terms merely were made subject to the provisions of section 752 of the Act of March 10, 1949, P. L. 30, 24 PS §7-752, or merely required defendants to comply with those provisions, then the section so incorporated by reference can have no effect in this case, because the contracts in question were not with a school district. It seems clear, therefore, that the facts must be clarified before a final conclusion can be reached as to whether plaintiff has a cause of action.

Both parties have submitted arguments, however, on the assumption that defendants are or may be bound by the provisions of section 752 of the Act of 1949, supra. The court will proceed on this assumption for such clarification as may result on the ability of plaintiff to state a legal cause of action.

Plaintiff has sued on the theory that he is a third-party beneficiary who may enforce the promise for his benefit contained in the contracts between the school authority and the general contractor. The law on the subject has been crystalized in section 133 of the Restatement of Contracts as follows:

"(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is . . .

"(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that *the purpose of the promisee* in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to *confer upon him a right against the promisor* to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

"(b) . . .

"(c) an incidental beneficiary if neither of the facts stated in Clause (a) nor those stated in Clause (b) exist." (Italics supplied.)

It is now quite clear that this rule is firmly a part of the law of Pennsylvania. In further elaborating upon the principle, it was stated as follows in Mowrer v. Poirier & McLane Corporation, 382 Pa. 2, 5, 6, (1955):

" 'To be a third party beneficiary entitled to recover on a contract . . . *both parties* to the contract must *so intend* and must *indicate that intention in the contract;* in other words, a *promisor* cannot be held liable to an alleged beneficiary of a contract unless the latter was within *his* contemplation at the time the contract was entered into and such liability was intentionally assumed *by him* in his undertaking; the obligation to the third party must be created, and must affirmatively appear, in the contract itself . . . The question whether a contract was intended for the benefit of a third person is always one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made.' " (Italics supplied.)

Likewise, it was held in Burke v. North Huntingdon Township, 390 Pa. 588 (1957), that it is not enough that it is intended by *one* of the contracting parties

and by the third person that the latter be a beneficiary but *both parties to the contract* must so intend and must *indicate that intention in the contract.*

Applying these rules to this case, was it the *purpose* of both the school authority and defendants, by the language used in the contracts, to confer upon plaintiff, or those of the class to which he belongs, the right to recover from defendants the specified minimum wages, and does the contract affirmatively disclose such an intention upon the part of *both* the school authority and defendants, as plaintiff's potential employers?

An answer may be found by examining the terms and the purpose of section 752 of the Act of March 10, 1949, supra. It will be observed, first of all, that the section is identified by the heading, "Contracts to *require competent workmen.*" (Italics supplied.)

The text then provides as follows:

"All contracts hereafter awarded . . . by any school district, shall contain a clause . . . requiring that no person shall be employed to do work under such contract except *competent and first-class workmen and mechanics.* No workmen shall be regarded as *competent and first-class,* . . . except those who are duly *skilled* in their respective branches of labor, and who shall be *paid* not less than such rates of wages and such hours' work as shall be the *established and current rates* of wages paid for such hours by employers of organized labor in doing of similar work . . ." (Italics supplied.)

It will at once be seen that this section was not concerned with how much money employes earn on the job, but with whether they are capable and competent to do the work. The legislature directed that this question should be determined by two tests: (1) Whether they are skilled in their branch of labor,

and (2) whether they are *paid* rates which organized laborers earn in such field of work. It is perfectly logical that one of the tests of whether a workman is competent and efficient is whether he sells his services cheaply, or at a higher rate insisted upon by other skilled workers.

Viewed in this light, it is abundantly clear that the purpose of the owner of the school building in inserting this section of the act into the contracts (if this is what it did), was to assure itself of careful, competent and skilled work, and not at all to see that defendant's employes earned a certain sum of money each week. As to defendant's intention in agreeing to such a provision, it can hardly be argued that their self-interest as employers would permit them to intentionally and voluntarily forego the right to purchase labor at the best available price. By referring to this section of the act in the contracts, both parties simply were including exactly what plaintiff himself in his complaint said it was, "a clause for the *employment of competent workmen . . .*" (Italics supplied.)

In this respect, the case is somewhat analogous to Mowrer v. Poirier & McLane Corporation, supra, in which the owner of personal property damaged during construction, as a third party beneficiary, sued the contractor for failure to comply with his agreement with the owner to provide insurance against such damage as plaintiff there suffered. The Supreme Court there said (p. 7) :

". . . the object of the insurance provision and the intention of the parties was to *protect* the contractor and subcontractors *from* claims for personal injuries and property damages,—not to compel them to *pay* such claims for the benefit of the claimants. It is, of course, true that the insurance provision in the agree-

ment accrued to the benefit of the plaintiff, not, however, as a donee beneficiary and as such entitled to a right of action against the defendant for failure to procure a proper policy, but merely as an *incidental* beneficiary, and such a beneficiary acquires no right of action against either party to the agreement . . ." (Italics supplied.)

Likewise, it may here be said that the intention of the parties in referring to this particular section of the act was to *protect* the school authority from receiving unskilled or inferior work, not to compel defendants to pay certain wages for the benefit of this plaintiff. The fact that this plaintiff might have received incidental benefit from being paid a higher rate as a skilled workman gives him no right of action against defendants for failure to pay such rate.

Our conclusion is fortified by an examination of the very next succeeding section of the Act of March 10, 1949, supra. Section 753 is headed *Stipulation for minimum wages,*" and provides as follows:

"(a) The specifications upon which contracts are entered into by any school district . . . *may, at the option* of the school district, contain the *minimum . . . wages* which may be paid by the contractor . . . for the work performed by laborers and mechanics . . . and such laborers and mechanics *shall in such cases be paid* not less than such minimum . . .wages." (Italics supplied.)

Here is the precise result for which plaintiff contends. Had the school authority and defendants inserted this language in their contracts, there could not be the slightest question that their intent was to stipulate for minimum wages, aside from competent work, that they intended plaintiff to benefit thereby, and that as a donee beneficiary he should be entitled to recover thereon. Were section 752 intended to pro-

duce this result, there would then be no necessity or purpose for section 753 at all. The clause contained in the former section *must* appear in *every* school district contract. If this clause fixes minimum wages in every contract, there never could be a case in which a school district *may, at its option,* stipulate minimum wages, and section 753, therefore, becomes purposeless and meaningless in every conceivable case.

Greleck v. Amsterdam, 20 D. & C. 351 (1934), cited by plaintiff, is not in point, even if it were binding upon us. There, the employer specifically contracted with the President of the United States to pay his employes, including plaintiff, a specified minimum wage. Here, defendant's promise was not to pay a stated wage, but to employ only competent and skilled workmen. Likewise, I. B. E. W. v. D. S. Warfel Assoc., Inc., 55 Lanc. 43 (1955), cited by defendants, is not in point. That case simply held that a labor union, as distinguished from an individual employe, had no right to enforce a contractor's promise with another to employ union labor. Rights of a labor union are not here involved.

Obviously, we express no opinion on whether it may be economically, socially or politically desirable that employes on public construction jobs be paid union rates. We do hold that if such a result is desirable, it cannot be obtained where neither the legislature nor the parties themselves have required it.

Plaintiff will be given an opportunity to amend his complaint to clearly state the exact contract of the parties, if he elects to do so in the light of the matters herein set forth.

### Order

And now, to wit, June 26, 1961, defendant's preliminary objections to plaintiff's complaint are sustained. Leave is granted to plaintiff to file an amended

complaint within 20 days from this date, if he elects to do so. An exception is noted for plaintiff.