Nicoletti *v.* Veitch (et al., Appellant).

·Argued April 19, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Norvin Nathan,* for appellants.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE COHEN, June 4, 1963:

This action in quo warranto was brought by plaintiff, Stephen Nicoletti, to question the right of James Whyno to hold the office of borough councilman. The undisputed facts show that a vacancy occurred on the

Bristol Borough Council by virtue of the resignation of one of its members. At the regular monthly meeting of council held on July 9, 1962, Nicoletti and Whyno were nominated to fill the vacancy. A roll call was taken and Nicoletti received a majority of the votes. The result of the vote was accordingly entered in the minutes of the meeting.

Subsequently, the mayor of the borough, upon being advised that he had the power so to act, vetoed the appointment of Nicoletti. On the basis of the mayor's veto, Nicoletti was refused his seat in council and another election was held at which Whyno was elected.[1] Nicoletti thereupon instituted this action claiming that he was entitled to the councilmanic seat.

The motions by both sides for judgment on the pleadings raise two questions: (1) whether Nicoletti was properly appointed by council on July 9, 1962, and (2) if he were properly appointed, whether the mayor had the power to veto the appointment. The court below held that Nicoletti was properly appointed and that the mayor possessed no power to veto the appointment. Accordingly, it entered judgment for the plaintiff. We hold that the court below acted correctly in this matter.

On the question of the validity of Nicoletti's appointment, section 901 of The Borough Code provides: "If any vacancy shall occur in the office of . . . council . . . the borough council shall fill such vacancy by appointing, by resolution, a registered elector . . . to hold such office for the unexpired term of the office."[2] Appellant argues that Nicoletti was not appointed "by resolution" in accordance with section 901 since no

[1] Actually the second vote ended in a tie which was broken in favor of Whyno by the mayor. See note 6 infra and accompanying text.

[2] Act of May 4, 1927, P. L. 519, §901, as amended, 53 P.S. §45901.

formal resolution was adopted naming him as council's appointee to fill the vacancy.

The identical contention was made and rejected in *Commonwealth ex rel. Fox v. Chace,* 403 Pa. 117, 168 A. 2d 569 (1961). In that case, as here, the only indication of council's choice to fill the vacancy was the entry made in the minutes of the meeting. We held that the entry was sufficient compliance with section 901 since the substance and not the form of council's actions must govern. We stated: "The substance of the procedure followed herein was manifestly expressive of the will of the majority. The fact that the appointment was not in the form of a resolution does not invalidate its significance." (403 Pa. at 122).[3]

Appellant asserts that our decision in *Chace* is inconsistent with our holding in *Meixell v. Hellertown Borough Council,* 374 Pa. 412, 97 A. 2d 822 (1953). In that case, however, council not only failed to adopt a resolution naming its choice, but affirmatively indicated that its choice was not finalized by passing a motion to table the vote. The opinion clearly points out that its rationale is not the fact that a resolution was not adopted, but rather that "no action was taken by motion, resolution, agreement, amendment or in any other parliamentary way which would show that the Borough Council had filled the vacancy. . . ." (374 Pa. at 418).

In the instant case, the intent of council to appoint Nicoletti to the existing vacancy is clearly indicated in the minutes of the July 9th meeting. Hence, no formal resolution was necessary to validate the appointment.

Turning next to the question of the mayor's veto power, §1007 of the code provides as follows: "*Every*

---

[3] See also *Commonwealth ex rel. v. Bitner,* 294 Pa. 549, 144 Atl. 733, (1929) (fact that a "motion" rather than a "resolution" was passed did not invalidate the appointment).

*ordinance and resolution,* except as herein otherwise provided, passed by the council, shall be presented to the [mayor][4] for his approval. If the [mayor] approves, he shall sign it; but, if he shall not approve, he shall return it with his objections to the council at its *next regular meeting. . . . .* If, after such reconsideration, two-thirds of all the members elected to said council . . . shall vote to pass such ordinance or resolution, it shall become of as full force and effect as if it had received the approval of the [mayor] . . . ."[5] (Emphasis supplied).

Although the term "every ordinance and resolution" would seem to be all-inclusive, we have limited it by holding that the mayor does not possess the veto power where its exercise would be deleterious to the conduct of borough government. Since stultification would result if the mayor had to consider and approve every councilmanic action, we have held, for example, that §1007 does not include resolutions and ordinances which are executive or ministerial in nature. See *Wilkes-Barre Connecting Railroad Company v. Kingston Borough,* 319 Pa. 471, 181 Atl. 564 (1935) ; *Jones v. Schuylkill Light, Heat and Power Company,* 202 Pa. 164, 51 Atl. 762 (1902). For the same reason, we have stated that the form of the councilmanic action— i.e., motion, resolution, ordinance, etc.,—is not determinative of the applicability of §1007. See *Commonwealth ex rel. v. Repp,* 242 Pa. 240, 243, 88 Atl. 1007, 1008 (1913) ; see also *Commonwealth ex rel. McChesney v. Diamond National Bank,* 9 Pa. Superior Ct. 118, 121 (1898). An examination of the Code indicates that the legislature also did not intend to include with-

---

[4] The Act of May 23, 1961, P. L. 210, §2, 53 P.S. §49145 (Supp. 1962), substitutes the term mayor for burgess to denominate the executive head of the borough.

[5] Act of May 4, 1927, P. L. 519, §1007, as amended, 53 P.S. §46007.

in the mayor's veto power resolutions passed by council to fill vacancies under §901.

Section 1003 of the Code,[6] which gives the mayor power to break ties in council, states that the power arises whenever council by virtue of the deadlock is unable to pass "any ordinance, resolution, or motion, *or to declare or fill any vacancy in its membership. . . ."* (Emphasis supplied). This section illustrates that the legislature intended a dichotomy between ordinary resolutions of council and those dealing with the filling of vacancies.

The dichotomy set forth in §1003 is explained by an examination of the mechanics for filling vacancies. Section 901 provides that unless a vacancy is filled within thirty days after it occurs, the duty to fill the vacancy devolves upon the courts. This is one of the rare occasions where the Code places a specific time limitation on councilmanic action. Moreover, as noted above, §1007 contemplates councilmanic reconsideration of the mayor's veto only at the next *regular* session of council. Consequently, if the mayor possessed the power to veto councilmanic appointments, one of two undesirable situations would occur: either the 30-day period would expire before the next regular session of council, thus precluding any councilmanic reconsideration of the appointment upon presentation of a petition to the court;[7] or the imminence of the expiration of the 30-day period would preclude any careful councilmanic reconsideration. The practical effect of the

---

[6] Act of May 4, 1927, P. L. 519, §1003, as amended, 53 P.S. §46003.

[7] For example, the Bristol Borough Council holds monthly meetings. Suppose Councilman A dies on April 10th and Councilman B is appointed to fill the vacancy at the regular meeting on May 1st. If the mayor has the power to veto this appointment and does so, the 30-day period (April 10-May 10) would expire long before the next regular meeting on June 1st.

veto power in this instance, therefore, would be not merely to check hasty councilmanic action—the normal function of the executive veto—but instead to seriously impair or to remove altogether from council its power to fill vacancies under §901 of the Code.

For these reasons, we conclude that the legislature did not intend to include resolutions filling vacancies under §901 within the mayor's veto power under §1007.

Accordingly, the judgment is affirmed.